Piestrak Unemployment Compensation Case.
Susquehanna Collieries Division, Appellant,
*v.* Unemployment Compensation
Board of Review.

Argued May 31, 1961. Before JONES, C. J., BELL, COHEN, BOK and EAGEN, JJ.

*S. Keene Mitchell, Jr.,* with him *Bedford, Waller, Griffith, Darling & Mitchell,* for employer, appellant.

*Alan Miles Ruben,* Deputy Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*John A. Gallagher,* with him *Herman E. Cardoni,* for claimants, intervening appellees.

*Sidney G. Handler,* and *Edgar R. Casper,* for amici curiae.

OPINION BY MR. JUSTICE COHEN, July 10, 1961:

Questions involving the relationship between the taking of vacation time, the receipt of vacation pay and the application for unemployment compensation are brought before us in this case. All of the applicants were both employees of the Susquehanna Collieries Division of the M. A. Hanna Company and members of the United Mine Workers of America. Their employment was governed by the terms of a collective bargaining agreement entered into by the union and the anthra-

cite operators on December 1, 1956. In March, 1958, that agreement was supplemented to provide that the vacation period of two weeks would commence at the beginning of the morning shift on Saturday, June 28, 1958, and end at the same time on Saturday, July 12, 1958. Under the agreement, as supplemented and continued in effect since 1956, vacation pay was fixed at a maximum of $140 for employees who had worked in each of the 24 semi-monthly pay periods in the year immediately preceding the vacation period and at lesser prorated amounts for employees who had worked in fewer than 24 of such pay periods.

Accordingly, the employer made the required vacation payments on the last payday in June, 1958, and shut down its operations from June 28, 1958 until July 12, 1958. A number of employees filed applications for unemployment benefits with the Bureau of Employment Security for the period of the shutdown. The Bureau allowed benefits (partial in most cases) in accordance with an allocation formula established by Departmental regulation 108 whereby the employee's full-time daily wage was divided into the amount of vacation pay, the resulting quotient being the number of days of the vacation period over which the vacation pay was spread. Any excess was allocated to the next working day. Thus, if an employee received $140 vacation pay and had a full-time daily wage of $28, the entire $140 vacation payment was allocated to the five working days of the first vacation week and unemployment benefits allowed in full for the second week. If he received $140 vacation pay and had a full-time daily wage of $20, the vacation payment extended into two days of the second week of vacation, giving the employe $40 for that week. If he was otherwise eligible for the then full unemployment benefit rate of $35, he would be awarded $1 in unemployment compensation since partial benefits were calculated by subtracting the

amount received ($40) less $6 from the full benefit rate ($35).[1]

The three present appeals proceeded as test cases for the several claims, the Unemployment Compensation Board of Review affirming the Bureau's action. After hearing argument and reargument, the Superior Court certified the cases to this court, noting that while four of the judges of that court were in favor of reversing the administrative determination, those four could not agree upon the proper method of allocation.

The three cases actually before us, for purposes of comparison, are as follows:

(1) Roman Piestrak received $140 vacation pay and had a full-time daily wage of $24.28. He was ruled ineligible for benefits for the week ended July 4, 1958, but was awarded $23 partial benefit for the week ended July 11, 1958 (i.e., $35—$12.70 [$18.70—$6]=$22.30 rounded off to $23).

(2) Charles R. Whary received $93 vacation pay and had a full-time daily wage of $17.10. He, too, was ruled ineligible for the first week but was awarded $34 partial benefit for the second week (i.e., $35—$1.52 [$7.52—$6]=$33.48 rounded off to $34).

(3) Marlin J. Marose received $116 vacation pay and had a full-time daily wage of $17. He, too, was ruled ineligible for the week ending July 7, 1958, but was awarded $11 for the week ending July 14, 1958

---

[1] Under the act, as it was in 1958, an individual was unemployed in a week of part-time work if he received remuneration less than the sum of his weekly benefit rate—which at that time was a maximum of $35—plus $6. If he were thus unemployed, he was entitled, under §402(d) of the act, to compensation in an amount determined by subtracting from the weekly benefit rate the excess of the remuneration actually received over $6. Thus, in the example given, the difference between the remuneration received ($40) and $6 or $34 is subtracted from the weekly rate ($35). The difference is the award of $1.

(i.e., $35—$24.95 [$30.95—$6]=$10.05 rounded off to $11). Marose had been off work since April 14, 1958; so his weeks began and ended differently and his excess vacation pay was calculated as $30.95.

Under the Pennsylvania Unemployment Compensation Law, Act of December 5, 1936, P.L. (1937) 2897, 43 PS §§751 to 881, two basic qualifications for the receipt of unemployment compensation are that an employee be "unemployed" and that he be "available for suitable work." §401, 43 PS §801. The Act further defines "unemployed" in §4(u), 43 PS §753(u), as follows: "(u) 'Unemployed.'—An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit: Provided, That, for the purposes of this subsection, (i) vacation pay and similar payments, whether or not legally required to be paid, and (ii) wages in lieu of notice, separation allowances, dismissal wages and similar payments, which are legally required to be paid, shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department.

"*Notwithstanding any other provisions of this act, an employe who is unemployed during a plant shutdown for vacation purposes shall not be deemed ineligible for compensation merely by reason of the fact that he or his collective bargaining agents agreed to the vacation.*

"*No employe shall be deemed eligible for compensation during a plant shutdown for vacation who receives directly or indirectly any funds from the employer as vacation allowance.*" (1955 amendment in

italics). This definition is the same as it was at the time of the claims presented here except, for an irrelevant change made in the 1959 session of the General Assembly. However, over the years since the initial enactment in 1936, the provision has undergone substantial change.

Originally, the act spoke not of "unemployed" but of "totally unemployed" and defined "total unemployment" as a week in which an employee "had no work for which wages are payable to him." §4(s). By amending acts of April 23, 1942, P.L. 60, and May 27, 1943, P.L. 717, the definition was changed to read: ". . . with respect to . . . any week during which he performs no services for which remuneration is paid or payable to him. . . ."

The Act of May 29, 1945, P.L. 1145, changed the qualifying adjective to "unemployed" and defined "unemployment" to mean: ". . . with respect to any week during which he performs no services and with respect to which no remuneration is paid or payable to him. . . . Provided, That . . . vacation pay . . . shall be deemed, in accordance with rules and regulations of the department, remuneration paid or payable with respect to the week or weeks for which such payments are made."

The Act of September 29, 1951, P.L. 1580, changed the defined word to "unemployed" and gave it the following meaning: ". . . with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him. . . . Provided, That . . . vacation pay . . . shall be deemed remuneration paid or payable with respect to such period as *shall be determined by rules and regulations of the department."* (emphasis supplied)

The Act of March 30, 1955, P.L. 6, added to the immediately preceding definition the last two sentences of the present definition.

These successive refinements of a critical word reflect a legislative effort to meet varying situations arising under the statute. For example, the first sentence of the 1955 amendment, the one regarding an employee on vacation as a result of his or his agent's agreement, appears to have been enacted to overcome the decisions of the Superior Court in *Mattey v. U. C. Board of Review,* 164 Pa. Superior Ct. 36, 63 A. 2d 429 (1949), and succeeding cases which adhered to it.

In the *Mattey* case the employee was out of work during an industry-wide shutdown for vacation as provided in the collective bargaining agreement between his union and the employer group. Because of the employee's short period of employment before the vacation he was not entitled to any vacation pay. The Superior Court held (1) that although he was "unemployed" within the terms of the definition in the statute, he was not actually unemployed but only subjected to an agreed to temporary cessation of work; (2) that, even otherwise, he was ineligible because his "unemployment" was voluntary; and (3) additionally, he was not available for work. Similar results based upon similar reasoning were reached in *Philco Corp. v. U. C. Board of Review,* 175 Pa. Superior Ct. 402, 105 A. 2d 176 (1954), and *General Electric Company v. U. C. Board of Review,* 177 Pa. Superior Ct. 49, 110 A. 2d 258 (1954). But see *Golubski v. U. C. Board of Review,* 171 Pa. Superior Ct. 634, 91 A. 2d 315 (1952).

Since the enactment of the 1955 amendment, an employee cannot be considered ineligible for benefits simply because the plant has shut down for a vacation period as agreed to by him or his union. His eligibility may still be questioned if he is, in fact, individually unavailable for work; but this is, as stated, a determination aimed at his personal status, not one acquired by an agreement with the employer. Nothing in the instant record or in the briefs or arguments indicates that

claimants were unavailable for work; in fact, the determination of eligibility can only lead to the contrary conclusion that they were available.

Other decisions of the Superior Court have dealt with the problem of allocation of vacation pay received by employees. In *Hoenstine v. U. C. Board of Review*, 176 Pa. Superior Ct. 306, 106 A. 2d 639 (1954), the employee was out of work because of a nationwide steel strike. At the time of this economic shutdown he received two weeks vacation pay, and this pay was allocated to the first two weeks of the shutdown. This allocation was sustained by the Superior Court, and unemployment benefits were denied for the two weeks in question. A second aspect of the allocation problem arose in *Santus v. U. C. Board of Review*, 177 Pa. Superior Ct. 496, 110 A. 2d 874 (1955). There, the employee was entitled to three weeks vacation pay, all of which he received at the time he took a one week vacation in May. When, in July, the employee was laid off for lack of work, he filed for unemployment benefits. The remainder of his vacation pay was allocated to the layoff period and benefits denied as required by the then existing provisions of Regulation 108 which the Department of Labor and Industry had adopted. The specific section of the regulation, as it then existed, called for an allocation of vacation pay to the first period of otherwise compensable unemployment occurring within 90 days of the receipt of the vacation pay. The Superior Court affirmed the allocation and denial of benefits against the employee's contention both that the statute's delegation of rule-making power was unconstitutional and that the regulation itself was arbitrary.

*Wheatland Tube Company v. U. C. Board of Review*, 186 Pa. Superior Ct. 224, 142 A. 2d 772 (1958), was somewhat similar. There, at the time of a plant shutdown of one week for vacation, the employee received three weeks vacation pay. At the end of the one week

the plant remained closed for two additional weeks because of a lack of work. The employee was denied benefits for those two weeks because of his receipt of three weeks vacation pay, the Superior Court holding that, regardless of the contents of either the collective bargaining agreement or the department's regulations, the purpose of the statute forbade payment of unemployment compensation. Aside from a reference to the fact that one week of the three weeks vacation pay was paid specifically for the announced one week of vacation, the opinion does not reveal the substance of the contending positions.

*American Insulator Corporation v. U. C. Board of Review*, 186 Pa. Superior Ct. 227, 142 A. 2d 774 (1958), involved the problem of allocating vacation pay not only to vacation time but within such time. The employee, whose average weekly wage was $66.40, received vacation pay of $68.78 at the time of a plant shutdown of two weeks for vacation. The employee claimed unemployment compensation for both weeks; but the Bureau of Employment Security, in accordance with Regulation 108, allocated $66.40 of the vacation pay to the first week and denied benefits for that week. Since only $2.38 remained for allocation to the second week, the Bureau allowed benefits for it. The employer claimed that the vacation pay should have been allocated equally to the entire vacation period, but the Superior Court upheld the Bureau's allocation and determination. It also concluded that the last sentence of Section 4(u) of the statute did not preclude payment of unemployment benefits simply because *some* payment had been made to the employee.

In resolving the difficulties posed by these cases, we are aided in several respects by the successive changes in the act. First, as noted above, absence from work because of a plant shutdown for vacation does not automatically make an employee ineligible either as a volun-

tary quit or as being unavailable for suitable work. Of course, his availability may still be questioned on an individual basis (i.e., he is not automatically, as the Superior Court implied in its opinion below, "deemed . . . available for suitable work" simply because of the 1955 amendment). Second, in order to resolve the multitude of varying situations, the legislature has delegated to the Department of Labor and Industry of the Commonwealth extensive regulatory authority subject to three standards: first, vacation pay shall be deemed remuneration; second, absence from work during an agreed to plant shutdown for vacation does not result in automatic ineligibility; and third, the receipt of vacation pay shall render an employee ineligible for compensation during a plant shutdown for vacation.

We agree with the Superior Court's prior holding that the last of these standards must be given a reasonable interpretation. Otherwise, the receipt of a few dollars as vacation pay would serve to make the recipient totally ineligible for benefits, a result which we cannot attribute to the legislature. We conclude further that the receipt of vacation pay is to be allocated to an actual vacation period and to be allocated within such period as the Department provides by its regulations; however, we find no justification in the statute or elsewhere for allocating vacation pay to a nonvacation period as was done in the *Hoenstine, Santus* and *Wheatland Tube* cases. We recently have had occasion to point out, in another context, that vacation pay is not compensation for only the calendar days of a vacation period but rather a bonus for a whole year's work. *Mathewson v. Westinghouse Electric Corp.,* 394 Pa. 518, 147 A. 2d 409 (1959). Section 4(u) of the Pennsylvania Unemployment Compensation Law, in indicating an alteration in this basic approach for the purposes of that law, must be taken as requiring allocation

of vacation pay to the actual vacation period; but we see no authority for allocating it to a non-vacation period. Third, reference to the collective bargaining agreement by the Department in its regulations is perfectly proper to determine the connection in a particular case between vacation pay and vacation time. Unlike the situation presented in *Warner Company v. U. C. Board of Review,* 396 Pa. 545, 153 A. 2d 906 (1959), where we rejected the contention that the bargaining agreement controlled the eligibility for compensation of a retired employee, the present case involves a legislative mandate which enables the administrative authorities to determine how to allocate by regulation and thereby grants power to the Department to require a reference to the bargaining agreement for determination of a fact regarding the relationship between pay and time.

The error into which the Superior Court has fallen stems primarily from that court's reluctance to recognize that determination of questions like the present one can be made only by reference to the specific provisions of the statute. Thus, whether an individual is "unemployed" is decided solely from the language of §4(u) and not by reference to what one might normally consider the word to mean. Whether the allocation of vacation pay to *and* within a vacation period is proper depends not simply upon how much vacation pay the individual has received but upon the adherence of the Bureau to the Department's regulation and that regulation's adherence to the legislative standards.

Considering these principles, the present appeals may quickly be resolved. The payments made were vacation payments; the time off from work was a vacation period; the payments were properly allocated first to the period and, then, within the period by the Bureau in accordance with the departmental regulation as authorized and directed by the statute.

The decisions of the Board of Review which sustained the Bureau's determinations in each case are affirmed.

Mr. Justice BENJAMIN R. JONES took no part in the consideration or decision of this case.

DISSENTING OPINION BY MR. JUSTICE BELL:

In the instant case the Agreement of December 1, 1956, between the anthracite industry and the United Mine Workers Union, as supplemented by a letter of March 12, 1958, from Thomas Kennedy, Vice President of the Union, provides for a fixed vacation period which commenced on June 28, 1958, and terminated on July 12, 1958.

Three employes are claiming unemployment compensation for the fixed vacation period which commenced and terminated as above mentioned, notwithstanding the fact that they were paid by the employer the agreed-upon vacation allowance* during the plant shutdown vacation in the above mentioned period.

Section 4(u) of the Unemployment Compensation Law, as amended by the Act of March 30, 1955, P.L. 6, §1, 43 PS §753, pertinently provides: ". . . Notwithstanding any other provisions of this act, an employe who is unemployed during a plant shutdown for vacation purposes shall not be deemed ineligible for compensation merely by reason of the fact that he or his collective bargaining agents agreed to the vacation. [However] *No employe shall be deemed eligible for compensation during a plant shutdown for vacation who receives*\*\* directly or indirectly *any* funds from the employer *as vacation allowance.*"

---

* The vacation allowance or pay was not nominal—it was substantial, indeed it was almost as large as the wages they received when actually working.

\*\* Italics throughout, ours.

It is clear as crystal that the Amendment prohibits compensation to an employe during a plant shutdown for vacation if said employe receives, directly or indirectly, as these claimants did, any payments from the employer as vacation allowance. In other words, it is absolutely clear that the Legislature did not intend an employe to be entitled to unemployment compensation benefits if he received from his employer, directly or indirectly, any vacation allowance or pay.

Paragraph A of §V of Regulation 108, issued by the Bureau of Employment Security, applies to this case and is in accord with the language and spirit of the aforesaid amendment. This paragraph provides:

"V. Criteria for Determining Whether a Payment was Received with Respect to a Particular Period; Allocation of Payments. A. Where payments are received by an employe pursuant to an agreement which specifically makes such payments payable with respect to a particular day, week or other period, such agreement shall control."

Paragraph F* of Section V of Regulation 108 relied upon by Appellee, if applied to the instant case, flies in the face of the amendatory Act and is therefore illegal and void.

The Superior Court in two recent cases aptly expressed the governing principle. In *Schuster Unemployment Compensation Case, Wheatland Tube Company v. U. C. Board of Review,* 186 Pa. Superior Ct. 224, 142 A. 2d 772, that Court said (page 226):

"In Hoenstine Unemployment Compensation Case, 176 Pa. Superior Ct. 306, 309, 106 A. 2d 639 (1954), we said: 'The basic purpose of the Unemployment Com-

---

* "F. Where it has been determined that a payment has been received by the claimant with respect to the particular period of inactivity in question, . . . the department shall determine the number of days or weeks to which such payment shall be allocated within such period by dividing the total amount of such payment by the individual's regular full-time daily or weekly wage."

pensation Law is to provide compensation to an employe during periods of idleness not created by his own fault. The intent is to insure compensation when he is unable to gain remuneration, but not to create a fund for double payments. Section 4(u) of the Act has as its purpose the prevention of payment of benefits during periods of idleness where the claimant has received money which relates thereto. Fazio Unemployment Compensation Case, 164 Pa. Superior Ct. 9, 63 A. 2d 489. This claimant received wages for the weeks he worked, two weeks vacation pay, and unemployment compensation for the remainder, for a total of fifty-two weeks. The purpose of the law would be subverted if claimant's position were upheld.' "

In *Myers Unemployment Compensation Case,* 186 Pa. Superior Ct. 227, 142 A. 2d 774, the Court reiterated the principle of the *Schuster* opinion, supra, stating (page 232) : "In Schuster Unemployment Compensation Case, filed this day, we again emphasized that it was *not the intent of the Unemployment Compensation Law to permit a claimant to recover both unemployment compensation and wages for a vacation period,* and that any interpretation of a collective bargaining agreement, or the Bureau of Employment Security rules, which brings about that result is contrary to the intent of the Unemployment Compensation Law."

Five to ten percent of the cases heard each year by our Court are so close that no member of the majority in any such case can confidently say "I am certain that I am right and those who espouse the opposite view are wrong." While this is not one of those cases, it is impossible for me to comprehend the rationale or the viewpoint of the majority.

The majority hold that when a collective bargaining agreement entered into by a union and an employer provides for a vacation period of two weeks, with a fixed stipulated pay for each of these two weeks at a total

wage which is less than he would have received if he had worked those two weeks, such an employe thereby attains the status of an unemployed person and becomes entitled to unemployment compensation,* under an allocation formula. This is not a case for any allocation formula. The basic purpose, reason and theory of unemployment compensation is to provide compensation for employables, i.e., those persons who can work, but are *involuntarily unemployed.* I am convinced that the majority construction of the Amendment of 1955 not only (1) violates and nullifies the collective bargaining agreement, but even more important (2) it flies in the teeth of the Amendment of 1955, and (3) is a distortion, perversion and vitiation of the basic reason and purpose of the Unemployment Compensation Act, and (4) makes a travesty of unemployment compensation.

---

* Appellee could just as logically but incorrectly argue that an employe is entitled to unemployment compensation for August if he is employed under a collective bargaining agreement at $100 a week composed of an 8 hour, 5 day week, for 11 months, but (because of the well-known slackness in that particular industry) is employed during August 7 hours a day for a 5 day week at a salary of $90.