*116 Dissenting Opinion by
Hoeeman, J.:
On March 3, 1966, the Company posted a notice advising the employees that it had decided to shut down the plant from June 27, 1966 to July 11, 1966. The notice further stated that all of the employees must consider this period as their vacation, and that all vacations which had been previously approved were can-celled in light of a heavy production schedule. The union protested the designation of the shutdown period as a vacation by letter dated June 10, 1966.
The Company did shut down for two weeks beginning on June 27, 1966. Claimant Frederick, a production employee, was laid off, and, in accordance with §12 of the Union-Company agreement, received his vacation pay.[1] On July 11, 1966, claimant asked for a vacation from November 28, 1966 through December 4, 1966, and the Company granted his request. Since he had already received his check for his vacation, he was given the above time off without payment.
Claimant filed for unemployment benefits for the two weeks that the plant was shut down, but was denied compensation by the Board on the ground that the period of June 27 through July 11, 1966 was an actual vacation period for which claimant was paid.
The majority today affirms the Board of Review’s finding of fact, and, therefore, affirms the denial of benefits. I disagree.
The labor agreement specifically provides: “12. Vacation eoe Hourly Employees. The Company will give each employee a vacation with pay sometime between the dates of January 1 and December 31 of each year based on previous service and conditions as outlined below: . . .
*117 “The company will endeavor to comply with the employees’ vacation requests, but vacation scheduling must not interfere with plant operations. In either case, a reasonable advance notice should be given.”
The labor contract here involved does not provide that the shutdown period must be considered a vacation period, nor does it authorize the Company to unilaterally designate such period as the vacation for each and every employee. In fact, the Company’s general manager stated that there had been no formal documentation of a mandated vacation period. The record also indicates that the contract designates the right exclusively to the employees, and the Company can only accept or reject that choice.[2]
Section 12 further provides: “When a department is closed down, all employees affected will receive their vacation bonus along with their regular check. This will not preclude any employee so affected from requesting a vacation at some other time during the vacation period. [Emphasis added]
“All employees who have not received their vacation prior to July 1 of each year, will receive their vacation bonus on the last pay day in June.
“All vacation bonuses will be given when an employee takes his vacation, unless he has previously received same as outlined in preceding paragraph.”
*118 In my opinion, these provisions provide for the method of payment for vacation time, but in no way designate the shutdown as “the” vacation time. In essence, the agreement states that an employee may, with the permission of the Company, take' a vacation at any time throughout the year. If he has not taken one prior to July 1 of the year, he will receive payment for his vacation time on the last pay day in June, regardless of whether he requests and takes a vacation at a later time. If an employee has already had a vacation prior to July 1, he will already have received his vacation pay if requested, and, therefore, would not be entitled to vacation pay on the last pay day in June. Thus, the above provisions apparently serve only to expedite Company bookkeeping with regard to vacation bonus checks rather than setting up a compulsory vacation schedule.
The facts of the present case comport with this interpretation. Claimant Frederick requested his vacation[3] for the period from November 28 to December 4, 1966, and the Company granted it. Although Frederick received his vacation pay on the last pay day in June, the period in November and December should properly be designated as his “vacation.” Furthermore, this interpretation follows the standards set forth in Piestrak Unemployment Compensation Case, 404 Pa. 527, 172 A. 2d 807 (1961), wherein the Supreme Court stated: “We conclude further that the receipt of vacation pay is to be allocated to an actual vacation period. . . .” [Emphasis added] Accordingly, our Court reversed an order of the Board allotting vacation pay to a nonvacation period in Franceschi Unemployment Compensation Case, 196 Pa. Superior Ct. 150, 173 A. 2d 774 (1961).
*119 The unfairness stemming from the allotment permitted by the majority opinion may best be illustrated by considering the following situation.
A worker who had not taken his vacation prior to the last pay day in June would have received his vacation payment at that time. On the other hand, a worker who had taken his vacation in February would, if requested, already have received his vacation check. Consequently, for him, the closing of the plant from June 27 to July 11, 1966 would have constituted a shutdown which would entitle him to receive compensation benefits. Thus, the worker taking an early vacation would have received both vacation pay and compensation benefits while working fewer weeks than the worker who had delayed his vacation and worked more weeks. Moreover, the worker who had not taken his vacation prior to the plant closing would be entitled to vacation pay alone.
Although findings of fact of the Board are binding upon this Court, the question of whether one is “unemployed” pursuant to §4(u) of the Unemployment Compensation Law is one that can only be made by reference to the statute. Thus, it is incumbent upon us to consider carefully the words of the labor agreement and surrounding circumstances to determine whether the present claimants are eligible for relief. Piestrak Unemployment Compensation Case, supra, at 537.
For the above reasons, I would, therefore, reverse the decision of the Board of Review and award benefits in accordance with the findings of fact and conclusions of law of the referee below.

 The claims of appellants Anthony S. Bellavia and Donald L. Davis were consolidated for suit because the basic fact situations are similar. The facts and reasoning above thus apply with equal force to all claimants involved.

 The Union Representative testified that: “The normal policy has been that if a person is allowed to apply for a vacation and if production scheduling allows, these vacations are granted at that particular time anywhere from January 1st through December 31st. The vacation policy has always been that if there was a specific time posted in sufficient time the persons who didn’t feel they could allow only additional time or had prior arrangements made, they would consider this their vacation. But, this did not exclude those from requesting a vacation at another time. . . . Many of our persons even though the notice was posted on the board there would be a shutdown period which would be considered as a vacation period, they would not be excluded from.having a vacation at another time if they so desired.”

 The fact that the label of the request slip was changed from “Vacation Time” to “Additional Time Off” in no way affects the merits of claimant’s contentions in light of the Union-Oompany Agreement.