United States Steel Corporation *v.* Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania. United States Steel Corporation, Appellant.

Argued October 28, 1976, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*James T. Carney,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 3, 1977:

This is an appeal by United States Steel Corporation (Employer) from an order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's determination that five claimants[1] were entitled to the unemployment compensation benefits which the Bureau of Employment Security (Bureau) had awarded them. We reverse and remand.

Claimants were employed at Employer's Universal Atlas Cement Division Plant. In December, 1974, plant management decided to shut the plant down for a period of time in early 1975. Management desired to designate part of the period as vacation time, during which all eligible employes would take their regular vacations and receive vacation pay. Management was empowered to do this under its Basic Labor Agreement with the United Steelworkers of America, provided that it gave the affected employes sixty days' notice. Accordingly, management posted copies of the following notice on the plant's bulletin board on December 30, 1974:

NOTICE TO ALL EMPLOYEES:

December 30, 1974

Revised projections for 1975 now dictate a total plant shutdown on Sunday, February 2, 1975. The shutdown will, as currently estimated, last approximately seven (7) weeks through Saturday, March 22, 1975.

---

[1] Harvey E. Clark, Jr., Joseph J. Dapra, Henry L. Lake, Friedrich Unterberger and William H. Wilson. Except as noted, the claims are factually identical.

The three week period, March 2, 1975 through March 22, 1975, will be utilized to schedule up to three weeks of regular vacation for all employees who are not required to work and who qualify.

Revised schedules showing department vacations will be posted.

(signed) G. N. PETERSON
Plant Manager

The employes received individual layoff notices one week prior to the shutdown, but the notices gave no recall date. However, after the plant closed as scheduled and the claimants applied for benefits, the Supervisor of Personnel Services (Supervisor) at the plant completed Employer's Separation Notice Forms (UC-45's) for all five claimants and entered "4-15-75" in the space provided for "Expected Date of Recall." Four of the claimants returned to work on March 23, the day that the posted notice indicated operations would resume; one returned March 25.

During the period designated as vacation time, all of the claimants received one or more weeks of vacation pay at rates in excess of $295.00 per week. The Bureau then awarded benefits to all five claimants for some of the weeks in which they received vacation pay. All five claimants had weekly benefit rates of $111.00 and partial benefit credits of $45.00 and received benefits at their full weekly benefit rate.

The Bureau found that all of the claimants had been separated from their employment indefinitely[2]

---

[2] The Bureau's Notice of Determination on the claim of Employe Wilson states that he was permanently separated, not indefinitely separated. The transcript of the hearing before the referee indicates that this statement resulted from the checking of the wrong box on the employer's Notice of Separation Form (UC-45). We treat the determination as if it had found Employe Wilson to have been indefinitely separated.

and that, therefore, under Section 404(d)(ii) of the Unemployment Compensation Law (Law)[3], the vacation payments they received were not deductible from their unemployment compensation awards. Section 404(d) provides, in pertinent part:

> (d) Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to the first day of July, one thousand nine hundred seventy-four shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less . . . (ii) vacation pay, if any, which is in excess of his partial benefit credit, *except when paid to an employe who is permanently or indefinitely separated from his employment.* . . . (Emphasis added.)

On appeal to the referee, Employer contended that the claimants had not been separated indefinitely, and that therefore the benefits payable to each claimant had to be decreased by an amount equal to his vacation pay less his partial benefit credit, an amount which in all cases exceeds $250.00 and which would, therefore, cancel out completely his $111.00 unemployment compensation award.

Since the crucial question under Section 404(d)(ii) was whether the claimants had been separated indefinitely, the referee, at four separate hearings, questioned the Supervisor regarding the April 15 recall date which appeared on the UC-45 form. The Supervisor testified, in substance, that, although the shutdown was expected to end March 23, the date of April 15 was entered because it represented a "conclusive

---

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §804(d)(ii).

catch-all date" by which time all employes would definitely have returned to work.[4]

The referee's decisions in the five cases are substantially identical and contain these findings of fact:

2. On December 30, 1974 the employer posted a notice to the effect that there would be a plant shutdown on Sunday, February 2, 1975 and the shutdown would, as currently estimated, last for approximately seven weeks.

. . . .

4. On Form UC-45, Separation Notice, the employer indicated the layoff would last until April 15, 1975.

Citing Employer's use of the words "estimated" and "approximately" in the December 30, 1974 notice, his failure to name a recall date in the individual layoff notices, and his naming of April 15, 1975 as the expected recall date on the UC-45's, the referee concluded that the claimants had been separated indefinitely.

---

[4] The issue is most sharply delineated in the exchange between the Supervisor and the referee in the hearing on Friedrich Unterberger's claim as follows:

"Q. Now, if you believed that the plant was going to return to work on March 23, 1975, why did you notify the Local Bureau that the expected date of recall was April 15, 1975?

"A. Based on my judgment, it was the date to be given would be a final date that everyone was to have been returned.

"Q. Are you, in effect, telling me then that the recall date wasn't definite?

"A. No, I was . . . the date of April 15 was listed to provide the state with a date by which all employees would be returned.

"Q. Well, if you knew that this employee was to return March 23, why didn't you put March 23 on that notice?

"A. Well, as surely as any person can be assured of what is going to happen, March 23 was the date. The question on the form asked an 'Expected Date of Recall,' which I gave as April 15 to be a conclusive date when all people would be returned."

On appeal to this Court, Employer contends that we need not reach the issue presented by Section 404(d), since the claimants were not eligible for benefits *at all* under Section 4(u) of the Law, which reads:

An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

Notwithstanding any other provisions of this act, an employe who is unemployed during a plant shutdown for vacation purposes shall not be deemed ineligible for compensation merely by reason of the fact that he or his collective bargaining agents agreed to the vacation.

*No employe shall be deemed eligible for compensation during a plant shutdown for vacation who receives directly or indirectly any funds from the employer as vacation allowance.* (Emphasis added.)

We disagree and hold that, notwithstanding the plain language of the last sentence of Section 4(u), past judicial construction of that sentence requires that it be interpreted not as an absolute bar to eligibility, but rather as a mandate that vacation pay be taken into account to reduce the benefits under certain circumstances, which are set forth in Section 404(d). In the *Piestrak Unemployment Case*, 404 Pa. 527, 172 A.2d 807 (1961), the Supreme Court analyzed the vacation pay issue and concluded that the last sentence of Sec-

tion 4(u) does not preclude an award of unemployment benefits simply because *some* payment had been made to the employe, but rather that it:

> . . . must be given a reasonable interpretation. Otherwise the receipt of a few dollars as vacation pay would serve to make the recipient totally ineligible for benefits, a result which we cannot attribute to the legislature.

404 Pa. at 536, 172 A.2d at 811-12.

It is only through this interpretation that Section 4(u)'s last sentence is reconcilable with the rest of the section and with the broad social purpose of the Unemployment Compensation Law. We therefore adopt the *Piestrak* Court's reasoning and hold that claimants herein are unemployed within the meaning of Section 4(u).

We disagree with the Board's contention on the issue of deductibility, however, and hold that claimants were not indefinitely separated, that the last clause of Section 404(d)(ii) is not operative, and that therefore vacation pay must be utilized to decrease the amount of benefits.

In *United States Steel Corp. v. Unemployment Compensation Board of Review,* 9 Pa. Commonwealth Ct. 206, 303 A.2d 852 (1973), we addressed ourselves to the meaning of the term "indefinitely separated from his employment" in the context of Section 404(d). There an employe was laid off due to an industry-wide production decrease with the expectation that he would someday be recalled, but with no indication of when that recall would occur. He began receiving unemployment compensation benefits. Seven weeks into the layoff, he took a one week vacation, which had been scheduled previously for him, and received vacation pay. The employer asked that the vacation pay be used to reduce the unemployment compensation benefits for that week, arguing that, although there

was no definite date of recall, there was a definite prospect, a definite probability, that the claimant would eventually resume his employment, and that therefore the claimant had not been indefinitely separated. We rejected the argument, stating:

> When, as here, an employee is separated from his job for a period which is indeterminate in extent and for which the time concerned is not clearly fixed, it seems clear that he has been 'indefinitely separated' from his employment. It would also appear to us that the 'indefinite' nature of a separation can be ascertained either from the possibility that the employee will not be called back to work at all or from the lack of knowledge as to when any recall may occur.

9 Pa. Commonwealth Ct. at 209, 303 A.2d at 855.

Applying this language to the instant case, we must conclude that the claimants were not indefinitely separated. Unlike *United States Steel, supra,* the separation period here was not indeterminate, but was fixed, as early as two months before it began, at seven weeks' duration. The December 30, 1974 notice gave a starting date and an ending date for the shutdown; the referee's Finding of Fact No. 2 is deficient and misleading in failing to mention the March 22 ending date. Since the notice was prominently posted[5], the employes may properly be charged with knowledge of its contents and hence with knowledge of the expected recall on March 23.

The referee placed undue emphasis on the words "estimated" and "approximately" in the notice. Employer's use of those words does not vitiate the fact

---

[5] The record reveals that the notice was posted on the bulletin board next to the clock where employes punched in, and, in the case of two claimants, on bulletin boards in their immediate work area.

that a time limit was placed on this shutdown, unlike the completely open-ended shutdown in *United States Steel, supra.* Here, there is no evidence that Employer ever intended the shutdown to continue beyond March 22. When Employer specified a date upon which the shutdown was expected to end, he saved layoffs occurring during the shutdown from the "indefinite separation" category. The fact that he subsequently named another date three weeks later as a catch-all date by which all employes would be back to work does not render indefinite a shutdown which was otherwise of finite and ascertainable duration. Accordingly, we reverse the decision of the Board and order it to make a redetermination of the amount of benefits due the claimants in a manner consistent with this opinion.

We therefore

ORDER

AND Now, this 3rd day of February, 1977, the decision of the Unemployment Compensation Board of Review is hereby reversed and the case is remanded to the Board for further proceedings consistent with this opinion.