Eleanor L. Caruccio Eckenrode, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent; Westinghouse Air Brake Company, Intervenor.

Robert W. Ferree, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent; Westinghouse Air Brake Company, Intervenor.

Lois M. Hurley, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent; Westinghouse Air Brake Company, Intervenor.

Rosalie E. Parola, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent; Westinghouse Air Brake Company, Intervenor.

Margaret R. Geiger, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent; Westinghouse Air Brake Company, Intervenor.

Catherine L. Boronkay, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent; Westinghouse Air Brake Company, Intervenor.

Argued May 3, 1978, before President Judge BowMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge DiSALLE did not participate.

*Albert C. Shapira*, for petitioners.

*Joseph E. Madva,* with him *Thorp, Reed & Armstrong,* for intervenor.

OPINION BY JUDGE CRUMLISH, JR., August 30, 1978:

Six unemployment compensation claimants,[1] employees of Westinghouse Air Brake Company, Inter-

---

[1] Eleanor L. Caruccio Eckenrode, Robert W. Ferree, Lois M. Hurley, Rosalie E. Parola, Margaret R. Geiger and Catherine L. Boronkay. Except as stated, the claims are factually identical.

venor (Company), at its Wilmerding, Pennsylvania plant, have appealed the decision of the Unemployment Compensation Board of Review (Board) affirming the referee's denial of benefits.

Claimants' employment with intervenor was governed by the terms of a collective bargaining agreement which contained the following provision:

Section 6.1 Inventory Shutdown. In the event the Company shuts down the plant *for the purpose of taking inventory,* all employees entitled to 4 or more weeks vacation during that year will be required to take one week of their vacation during such shut-down period, unless scheduled to work during such period. (Emphasis added.)

It is undisputed that in 1976, all the Claimants had sufficient length of service with Company to entitle each of them to four or more weeks of vacation that year.

On December 15, 1975, Company posted a notice in its plant stating that the plant and offices would be shut down for two consecutive days, Thursday and Friday, July 29 and 30, 1976, "for the purpose of taking inventory," and further, that "following the completion of the physical inventory," the plant would be closed for the week of August 2 through August 9, during which time all employees not scheduled to work would be required to take one week of their vacation.

On Monday, July 26, 1976, Company shut down its foundry for five days for the purpose of taking inventory in that section of the plant. Then, on the 29th and 30th, the rest of the plant was shut down so that the inventory could be physically counted, following which the plant remained closed for the next week while Company completed paperwork connected with the inventory.

All of the Claimants had requested and been approved vacation time for periods other than that assigned them by Company. Claimant Eckenrode, who worked in the foundry, was scheduled on vacation by Company for the week from Tuesday, July 27 to Tuesday, August 3, 1976. The Company scheduled the other five Claimants on vacation during the week beginning Monday, August 2. Each of the six Claimants was paid and received vacation pay for the week assigned him, in an amount which exceeded his weekly benefit rate plus partial benefit credit. Claimants' union has filed a grievance over its disagreement with Company's interpreting the labor agreement so as to allow it to allocate vacation time to the subject shutdown.

The Bureau of Employment Security disapproved Claimants' applications for benefits for the week in which Company scheduled them for vacation, under Sections 401, 4(u) and 404(d) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Special Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§801, 753(u) and 804(d). Following three hearings,[2] the referee, in a single decision governing all six cases, denied benefits on the basis of Sections 404 (d)(ii) and 4(u). The Board affirmed.

Claimants argue that under the labor agreement the plant shutdown period in this case could not be assigned as a vacation period and that, therefore, vacation pay could not be allocated to that period and contend that the Board erred in effectively approving that allocation without making a specific finding that

---

[2] Claimants Eckenrode and Ferree received separate hearings; the cases of Claimants Hurley, Parola, Geiger and Boronkay were consolidated into one hearing before the referee, at which all four claimants testified.

the shutdown period could be assigned as a vacation period. We disagree.

Section 4(u) of the Law provides:

(u) 'Unemployed.'

An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

Notwithstanding any other provisions of this act, an employe who is unemployed during a plant shutdown for vacation purposes shall not be deemed ineligible for compensation merely by reason of the fact that he or his collective bargaining agents agreed to the vacation.

No employe shall be deemed eligible for compensation during a plant shutdown for vacation who receives directly or indirectly any funds from the employer as vacation allowance.

Section 404(d) provides, in part:

(d) Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to the first day of July, one thousand nine hundred seventy-four, shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less . . . (ii) vacation pay, if any, which is in excess of his partial benefit credit, except when paid to an employe who is permanently or indefinitely separated from his unemployment. . . .

In *United States Steel Corp. v. Unemployment Compensation Board of Review*, 28 Pa. Commonwealth Ct. 445, 450-1, 368 A.2d 1319, 1322 (1977), we discussed the interrelation between the two sections, stating,

> notwithstanding the plain language of the last sentence of Section 4(u), past judicial construction of that sentence requires that it be interpreted not as an absolute bar to eligibility, but rather as a mandate that vacation pay be taken into account to reduce the benefits under certain circumstances, which are set forth in Section 404(d). In the Piestrak Unemployment Case, 404 Pa. 527, 172 A.2d 807 (1961), the Supreme Court analyzed the vacation pay issue and concluded that the last sentence of Section 4(u) does not preclude an award of unemployment benefits simply because *some* payment had been made to the employee, but rather that it:
>
> > '. . . must be given a reasonable interpretation. Otherwise the receipt of a few dollars as vacation pay would serve to make the recipient totally ineligible for benefits, a result which we cannot attribute to the legislature.'
>
> 404 Pa. at 536, 172 A.2d at 811-12. It is only through this interpretation that Section 4(u)'s last sentence is reconcilable with the rest of the section and with the broad social purpose of the Unemployment Compensation Law. (Emphasis in original.)

Thus, receipt of vacation pay during a period *properly designated as vacation* will not disqualify an employee from unemployment compensation benefits, but will merely call into operation the deduction provisions of Section 404(d)(ii). However, before this

doctrine can even apply, the vacation pay must have been allocated to a period properly designated as vacation time. *Piestrak Unemployment Compensation Case,* 404 Pa. 527, 172 A.2d 807 (1961); *Thomas v. Unemployment Compensation Board of Review,* 11 Pa. Commonwealth Ct. 431, 314 A.2d 594 (1974); *Ungarean Unemployment Compensation Case,* 207 Pa. Superior Ct. 506, 218 A.2d 916 (1966); *Franceschi Unemployment Compensation Case,* 196 Pa. Superior Ct. 150, 173 A.2d 744 (1961). If the employer has allocated vacation pay to a period which may not properly be considered vacation time, that vacation pay may not be relied upon *at all* to disqualify employees from receipt of unemployment compensation benefits for that period, and, absent any other reason for disqualification, the claimant would be entitled to full benefits. In that situation, the deductions under Sections 4(u) and 404(d) cannot be applied. As our Supreme Court said in *Piestrak* and this Court said in *Thomas,* a collective bargaining agreement may be consulted to determine whether a period may properly be considered vacation time.

Here, we believe the employer was justified in designating the period of plant shutdown following the physical counting of the inventory as a vacation week. The referee found that during the week following the physical counting of the inventory, the Company completed other tasks directly involved with the taking of inventory, including the updating of production. control records and balancing various accounts. This finding is supported by the testimony of the Company's union relations manager, which was not contradicted by any testimony from Claimants. Under this set of facts, we view the physical counting of materials as only one step in the inventory-taking process and consider the activities of the week

following the physical count as inseparable and essential parts of the taking of inventory. Since the underlying facts are undisputed, we can conceive of no purpose to be served by remanding the case to the Board to make the necessary legal conclusion, which would then be fully reviewable by us on appeal. Accordingly, we hold that, for the purposes of determining eligibility for unemployment compensation, and for that purpose only, the Company's designation of the week of August 2, 1976 as vacation time was not inconsistent with the terms of the collective bargaining agreement which required allocation of one week vacation time to plant shutdowns effected "for the purpose of taking inventory." We do not intend our decision to control in any way the outcome of the grievance procedure initiated by the employees.

Since the vacation pay was properly allocable to the shutdown week, the deduction considerations of *United States Steel Corp., supra,* are applicable. It is undisputed that the vacation pay each claimant received exceeded the total of his weekly benefit rate plus partial benefit credit and that Claimants were not permanently or indefinitely separated from their employment. Hence, the deduction required by Section 404(d) cancels out completely any entitlement to benefits, as the Board and referee held.

Accordingly, we

### ORDER

AND Now, this 30th day of August, 1978, the decision of the Unemployment Compensation Board of Review dated January 13, 1977, denying benefits to Eleanor L. Caruccio Eckenrode, Robert W. Ferree, Lois M. Hurley, Rosalie E. Parola, Margaret R. Geiger and Catherine L. Boronkay is hereby affirmed.