United States Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and John A. Frisch, Respondents.

United States Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Bernard A. Molchany, Respondents.

Argued November 1, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and MacPhail. Judges Di-Salle and Craig did not participate.

*James T. Carney,* for petitioner.

*Ira Silverstein,* for respondents.

OPINION BY JUDGE CRUMLISH, JR., March 29, 1979:

Consolidated for our review are two appeals by the United States Steel Corporation (Employer) from separate decisions of the Unemployment Compensation Board of Review affirming payment of benefits to various claimants.[1] The issue for determination is whether the claimants were ''indefinitely separated from their employment'' pursuant to Section 404(d) (ii) of the Unemployment Compensation Law (Act)[2] such that benefits received during a plant shutdown would not be reduced by vacation pay.[3]

---

[1] Bernard A. Molchany et al.; John A. Frisch et al.; and Harry J. Gilbert et al.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §804(d) (ii).

[3] Section 404(d) (ii) reads, in pertinent part, as follows:

(d) Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to the first day of July,

In the appeal at No. 1878 C.D. 1977, it is undisputed that Employer properly determined that a shutdown was required based on an analysis of market conditions and plant inventory. Notice was posted on plant bulletin boards informing that the probable length of the shutdown would be approximately nine weeks. Separation Notice forms (UC-45's) distributed to the employees indicated that the expected date of recall was August 15, 1976. On June 13, 1976, the employees were laid off. The plant, in fact, reopened on July 25, 1976, some three weeks earlier than expected, when an unexpected sale was made enabling Employer to terminate the shutdown earlier than originally anticipated (*i.e.,* August 15, 1976).

Claimants received unemployment compensation benefits between June 13, 1976 and July 25, 1976 which were not reduced by vacation pay received by certain employees during some of the weeks in question. Neither the Bureau of Employment Security (Bureau), referee nor Board reduced the benefits by vacation pay concluding that the layoffs were indefinite under Section 404(d)(ii).

In the related case at No. 2400 C.D. 1977, the only substantial factual difference is that the plant did not in fact reopen on the expected date of recall because a tropical storm caused the layoff to be extended by one week as a response to market conditions occasioned by the storm.

Employer appeals Board's refusal to reduce benefits by vacation pay. We reverse.

---

one thousand nine hundred seventy-four, shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of . . . (ii) vacation pay, if any, which is in excess of his partial benefit credit, except when paid to an employe who is permanently or indefinitely separated from his employment. . . .

We have addressed the meaning of the phrase "indefinitely separated from his employment" in the context of Section 404(d)(ii) on two prior occasions. In *United States Steel Corp. v. Unemployment Compensation Board of Review,* 9 Pa. Commonwealth Ct. 206, 303 A.2d 852 (1973), there was no indication of when the plant shutdown would terminate, the layoff was open-ended, and we granted benefits writing:

> When, as here, an employee is separated from his job for a period which is indeterminate in extent and for which the time concerned is not clearly fixed, it seems clear that he has been 'indefinitely separated' from his employment. It would also appear to us that the 'indefinite' nature of a separation can be ascertained either from the possibility that the employee will not be called back to work at all or from the lack of knowledge as to when any recall may occur.

9 Pa. Commonwealth Ct. at 209, 303 A.2d at 855.

In *United States Steel Corp. v. Unemployment Compensation Board of Review,* 28 Pa. Commonwealth Ct. 445, 368 A.2d 1319 (1977), the separation period was fixed, *i.e.,* it was not "open-ended"; with the expected date of recall based on business judgment.[4] Notice of shutdown was clearly posted with an ap-

---

[4] Footnote 4 read in its entirety:

[4] The issue is most sharply delineated in the exchange between the Supervisor and the referee in the hearing on Fredrich Unterberger's claim as follows:

Q. Now, if you believed that the plant was going to return to work on March 23, 1976, why did you notify the Local Bureau that the expected date of recall was April 15, 1975?

A. Based on my judgment, it was the date to be given would be a final date that everyone was to have been returned.

Q. Are you, in effect, telling me then that the recall date wasn't definite?

proximate period of seven weeks listed as the expected length of the shutdown. UC-45 forms indicated a specific "catch-all-date" as the anticipated date of recall. We denied benefits in reversing the Board indicating that this layoff was clearly distinguishable from the open-ended, indefinite layoff in our 1973 *United States Steel Corp.* decision, *supra*.

In the cases now before us, notice was clearly posted on bulletin boards indicating an approximate date of recall.[5] The UC-45 forms provided a specific date on which the recall was to occur. An employer-representative testified in both instances that the recall date was based on the best of forecasting abilities and was to the best of his knowledge, at the time of the layoff, correct. There is no indication that, as of the date of the shutdown, the employer, based on marketing research, was less than definite as to the date of recall.

The fact that an employer is constantly in the process of reevaluating variable market conditions or that the recall does not occur exactly on the date specified, where, as here, there was a reasonable explanation of why the recall date was not met, is not relevant. The records reflect that the shutdowns were fixed to ter-

---

A. No, I was . . . the date of April 15 was listed to provide the state with the date by which all employees would be returned.

Q. Well, if you knew that this employee was to return March 23, why didn't you put March 23 on that notice?

A. Well, as surely as any person can be assured of what is going to happen, March 23 was the date. The question on the form asked an 'Expected Date of Recall,' which I gave as April 15 to be a conclusive date when all people would be returned.

[5] This notice was identical in all substantive respects with that posted in our 1977 *United States Steel Corp.* decision, *supra*. We indicated that undue emphasis on the words "estimated" and "approximately" is not warranted.

minate on a date certain based on an analysis of market conditions existing at the time of the layoff.

Accordingly, we

## ORDER

AND Now, this 29th day of March, 1979, the decisions of the Unemployment Compensation Board of Review, Nos. B-149047, B-149048 and B-136042, are reversed and the matters are remanded for the deduction of vacation pay for the weeks at issue.