Robert C. Bennett, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Samuel Finkelstein, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Robert R. Johnson, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Victor E. Tenaglia, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Mary C. Law, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued January 30, 1985, before president Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, COLINS and PALLADINO.

*Leonard V. Tenaglia, Richard, DiSanti, Hamilton, Gallagher & Paul,* for petitioners.

No appearance for respondent.

*D. Barry Gibbons, Gibbons, Buckley, Smith, Palmer
& Proud, P.C.,* for intervenor, Delaware County Community College.

OPINION BY JUDGE COLINS, April 24, 1985:

Robert C. Bennett, Samuel Finkelstein, Robert R. Johnson, Victor E. Tenaglia and Mary C. Law (claimants) appeal orders of the Pennsylvania Unemployment Compensation Board of Review (Board) denying them benefits under the provisions of Sections 401, 4(u) and 404(d) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§801, 753(u) and 804(d).

Claimants are employed by Delaware County Community College as Instructors.[1] On August 31, 1981, a work stoppage ensued which lasted through September 24, 1981.[2] The instructors were supposed to report for work on August 24, 1981 and classes were scheduled to begin on August 31, 1981. Negotiations for a new contract began in July of 1981, but when no agreement was reached by August 24, 1981, the employer extended to the union an offer to continue work on a day to day basis pending settlement of the new wage provision. Employment on a day to day basis would continue until midnight of August 30, 1981. The

---

[1] Claimants are members of the Delaware County Community College Association of Higher Education (Union). The approximate number of employees represented by the union is 97. The majority of the membership is comprised of 10 month employees and the remainder is comprised of 12 month employees.

[2] The parties stipulated that the collective bargaining contract language in question would be entered as an exhibit and will control this action. There was a clause in the contract that provided for the renegotiation of the base annual salary at the end of the second year of the agreement. Furthermore, this clause preserved to the union the right to strike on the issue of wages.

4

members of the union accepted this offer and worked from August 24th through August 28th.

On August 27th, the employer extended to the union another offer to continue employment indefinitely under terms of the existing contract if the union agreed not to strike until the school term was completed.[3] The union rejected this offer and instead offered to continue working on a day to day basis.

On August 31st, the employer notified the union that the College was closing immediately as a result of the rejection by the union. Nevertheless, members of the union reported for work on August 31st and found classroom doors locked.

As a result of the work stoppage, claimants did not work for eighteen days. Work was resumed on September 25, 1981 after the employer and union members reached a tentative agreement.

The pertinent sections of the agreement read as follows:

(1) Salary increases for all ISM's (Instructional Staff Members) covered by the agreement shall be implemented for the 1981-1982 year . . . with the exceptions that the resumption of the Fall term shall be Friday, September 25, and that one additional day shall be added to the calendar at the discretion of the College, for a total of 169 days.[4]

(2) The following provisions with respect to the eighteen service days for twelve month ISM's which must be rescheduled is as follows:

(A) Nine of the service days to be rescheduled will be charged against each ISM's accrued vacation allotment;

[3] The Fall 1981 school term was to last 15 weeks.
[4] Ten month employees are required to work 169 days.

(B) The remaining nine of the service days to be rescheduled shall be made up through work assignments to be determined at the discretion of the President of the College;

(C) An ISM may choose to charge any number of service days under (B) above to his/her remaining vacation accrual in lieu of having such days rescheduled.

Claimants were paid on September 4, 1981 for the day to day work period of August 24th through the 28th. On October 2nd and 16th, claimants were fully paid for the period they remained out of work, August 31st to September 24th. In addition, they were paid for the period of September 24th to October 16th.

The claimants filed for unemployment benefits with the Office of Employment Security (OES). The OES denied benefits to claimants under the provisions of Section 402(d) of the Law.[5] Claimants appealed and the referee reversed, finding that there was a lockout and claimants were not ineligible under Section 402(d) of the Law. The referee refused to rule on the question of whether claimants were unemployed since they received remuneration or vacation pay for the period of the work stoppage. Instead, he directed the OES to further examine the eligibility of the claimants under Sections 401, 4(u) and 404(d) of the Law.[6] The employer appealed the referee's decision

---

[5] Section 402(d) of the Law, *as amended*, 43 P.S. §802(d), provides in relevant part:

An employee shall be ineligible for compensation for any week—

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lockout) at the . . . premises at which he is or was last employed.

[6] The parties agreed to have the issue of unemployment under Sections 401, 4(u) and 404(d) of the Law heard and determined by the referee.

and the Board reversed, agreeing with the referee that there had been a lockout, but deciding that claimants were not unemployed during the work stoppage. Thus, claimants were ineligible for benefits under the provisions of Section 401, 4(u) and 404(d) of the Law.[7] We agree.

Claimants maintain that the Board exceeded its scope of review in the instant matter. There is no strict regulation preventing the Board from considering an issue not ruled upon by the referee. The issues which the Board may determine in an appeal from a referee's decision are delineated in the following Department of Labor and Industry regulation:

(b) The Board shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case, with the approval of the parties, may be determined though not expressly ruled upon or indicated in the notice of hearing, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby and are supported by the record.

34 Pa. Code §101.107(b). *See also Torsky v. Unemployment Compensation Board of Review*, 81 Pa. Commonwealth Ct. 642, 474 A.2d 1207 (1984).

In the instant matter, the Board did not take additional testimony, and after reviewing all of the evidence, it considered the issue of unemployment. Since the parties agreed to have the issue decided by the referee, who erroneously ordered a remand to the OES, and since the parties were not prejudiced by

---

[7] The employer does not challenge the finding of the referee and Board that a lockout had occurred. However, employer contends that claimants received full compensation for the period of the work stoppage. Therefore, they were not unemployed.

the Board's action, we believe that the Board acted within its powers in considering this issue.

Claimants also contend that the Board erred in determining that they received remuneration or vacation pay for the period of the work stoppage, thus making them ineligible for unemployment benefits.

The term "unemployed" is defined in Section 4(u) of the Law. This section provides, *inter alia*, that:

[a]n individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit: . . . .

Furthermore, Section 404(d) of the Law provides, in relevant part, that:

[n]otwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to July 1, 1980 shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of (i) the remuneration, if any, paid or payable to him with respect to such week for services performed which is in excess of his partial benefit credit: (ii) vacation pay, if any, which is in excess of his partial benefit credit, except when paid to an employe who is permanently or indefinitely separated from his employment. . . .

The Board made the following finding regarding remuneration and vacation pay received by the claimants:

8

20. On September 4, 1981, October 2, 1981, and October 16, 1981, the claimant received a total of $3,392.86 from the College representing remuneration and vacation payments for the eight-week period from August 22, 1981, to October 16, 1981.

It went on to reason:

Whether these payments are deemed remuneration or vacation pay is a distinction without a difference since the amount received for each week at issue is greater than the total of the claimant's weekly benefit rate and partial benefit credit. Consequently, if the payments the claimants received for each week at issue are deemed vacation payments, then the vacation payment for each week at issue, less the claimant's partial benefit rate, exceeds his weekly benefit rate. Alternatively, if the payments are deemed remuneration for services to be performed at a later date, then the remuneration for each week at issue, less the claimant's partial benefit credit, exceeds his weekly benefit rate. In either case, the claimant cannot be held to be unemployed and is therefore ineligible for compensation for the weeks at issue.

The record clearly indicates that the union and the College reached an agreement whereby salaries of all Instructional Staff Members would be increased and claimants would receive full pay for the period of the work stoppage. However, the eighteen days lost during the work stoppage would have to be made up. Again, this provision was agreed upon by the union and the College.[8]

---

[8] There was a difference in the method of making up the lost days. Ten month employees agreed that they would have to work

After a careful review of the record, we affirm the Board's conclusions that claimants were fully paid for the period in question and they were not unemployed nor were they entitled to benefits. *McKeesport Area School District v. Unemployment Compensation Board of Review,* 40 Pa. Commonwealth Ct. 334, 397 A.2d 458 (1979).

Claimants improperly rely on the case of *Eckenrode v. Unemployment Compensation Board of Review,* 37 Pa. Commonwealth Ct. 458, 390 A.2d 886 (1978) to support their contention that claimants were unemployed during the period in question and the pay they received was vacation pay which was allocated by the employer to a period improperly considered vacation time.

The *Eckenrode* case is more supportive of employer's argument. In *Eckenrode,* a plant was shut down for one week and employees were required by the employer to take one week of their vacation at this time. This requirement was included in the collective bargaining agreement; therefore, our Court found that the vacation pay was properly allocable to the shutdown week, making claimants ineligible for benefits. In the matter *sub judice,* claimants argue that the vacation pay was not properly allocated to the period of the work stoppage. However, as we already mentioned, the union and College mutually agreed to allocate vacation pay to the period of the work stoppage.

Since claimants received remuneration or vacation pay which was properly allocable to the period of the

a total of 169 days beginning September 25 and twelve month employees agreed that they would have to make up the lost time by charging nine days to accrued vacation allotment and nine days to work assignments to be scheduled at the discretion of the college.

work stoppage, they were properly deemed not unemployed and were ineligible for benefits.[9]

Accordingly, we affirm the decision of the Board.

### ORDER

AND Now, April 24, 1985, the orders of the Unemployment Compensation Board of Review, dated April 6, 1983, at Nos. B-216785 through and including B-216789, are hereby affirmed.

Judge DOYLE did not participate in the decision in this case.

Judge WILLIAMS, JR., did not participate in the decision in this case.

---

[9] Claimants do not dispute that they received some type of compensation, whether vacation pay or remuneration, which exceeded the total of their weekly benefit rate plus partial benefit credit.

---

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I respectfully dissent. The majority reasons that since the parties approved of the referee deciding the previously unresolved employment status issue,[1] this consent automatically transfers to the Unemployment Compensation Board of Review. However a separate regulation, *pertaining solely to the Board,* authorizes it to decide issues left undetermined below *only with the parties' approval* or with proper notice of hearing.[2] This distinct provision for the Board's resolution of questions not previously considered clearly required a second, independent expression of the par-

---

[1] *See* 34 Pa. Code §101.87. Despite the parties' consent, the referee chose not to rule on the question of employment status.

[2] 34 Pa. Code §101.107(b). The Board did not issue a notice of hearing or conduct an evidentiary hearing regarding employment status.

ties' approval of the Board's treatment of employment status, notwithstanding the earlier, ineffectual grant of such authority to the referee.[3] Because this consent was not forthcoming, the Board improperly determined that the claimants had not been unemployed during the work stoppage. I would therefore reverse the Board's order and remand the case to the referee for a determination of employment status. *Gould v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 42, 430 A.2d 731 (1981).

---

[3] There are valid reasons for demanding renewed consent at the Board level when the referee has declined to reach the unresolved issue. For instance, if the referee announces in advance his intention to forego consideration of the question, the parties cannot be expected to submit extensive evidence and arguments on it. The Board should thus be precluded from determining this issue absent the consent of both sides, or otherwise the parties will be foreclosed from addressing this matter and the Board may render an ill-informed decision. Moreover, assuming the issue is fully presented to the referee but he fails to resolve it, the parties should not be placed at risk of ignoring at the Board level a point which turns out to be decisive.