Robert Dennis et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Congoleum Corporation, Respondents.

216

Argued October 8, 1980, before Judges CRAIG, MAC-PHAIL and WILLIAMS, JR., sitting as a panel of three.

*Marc S. Jacobs, Galfand, Berger, Senesky, Lurie & March,* for petitioners.

*William J. Kennedy,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Acting Attorney General, for respondents.

OPINION BY JUDGE MACPHAIL, December 10, 1980:

This is an appeal by Robert Dennis (Claimant), a token claimant,[1] from an order of the Unemployment Compensation Board of Review (Board) affirming the decision of a referee which disallowed unemployment compensation benefits previously granted to Claimant, for the week ending July 22, 1978, by the Bureau (now Office) of Employment Security (Bureau). For the reasons which follow, we reverse and remand.

The basic fact situation applicable to all claimants is as follows: Employer, Congoleum Corporation, posted a notice in its plant on April 20, 1978 to the effect that a summer plant shutdown would be scheduled for a two week period beginning on July 17 and ending on July 30, 1978. Testimony contained in the record indicates that approximately one-half of the plant employees continued to work during the shutdown, performing in large part maintenance and repair work. The claimants were not notified until Friday, July 14 that they were not scheduled to work during the shutdown period which began the following Monday, July 17.[2] Each of the claimants had received varying amounts of vacation *pay* earlier in the year but had

---

[1] There are a total of thirty-nine claimants. While the facts differ somewhat in each case there appears to be a single issue common to all which, when decided, will control the disposition of each case.

[2] At least five employees testified that notification of the shutdown work schedule was not available until July 14. The personnel manager for Employer testified that a primary purpose for the shutdown was also to give management personnel an opportunity to take their vacation. However, it was not mandatory that vacation be taken during the shutdown.

chosen not to take vacation *time* off. This unusual situation resulted from a provision in the collective bargaining agreement reached by the Employer and the employees' union[3] which allowed an employee, with the agreement of Plant Management, to continue to work, forfeit vacation time off, and thereby receive vacation pay in addition to regular wages.[4] Claimants did not receive additional remuneration for the shutdown period. In light of the fact that claimants had elected not to take vacation time off when they received their pay, Employer allocated the pay received earlier in the year to the time during the plant shutdown when claimants were not scheduled to work, thus disqualifying claimants from unemployment compensation benefits. It is the propriety of these allocations which is at issue here.

In his decision the referee ruled, *inter alia*, that the plant shutdown was for *vacation* purposes and that the allocation of vacation pay received by claimants to the July shutdown period was proper pursuant to Sections 4(u) and 404(d)(ii) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§753(u) and 804(d)(ii). The issue presented for our consideration is whether the plant shutdown was, as to the claimants, for vacation purposes thereby rendering proper the allocation of vacation pay to the shutdown period.

---

[3] United States Steel Workers of America, Local 12698.

[4] The record also establishes that employees who received vacation *pay* at one time during the year could then request a leave of absence *without pay* for another time period, thus receiving by year's end both vacation pay and time off. This arrangement apparently enabled employees to take advantage of a vacation wage calculation which varied depending on wages and time worked during the eight weeks immediately prior to the requested pay date. Leave of absence requests, however, were given second priority to regular vacation requests.

In cases of this nature where the party with the burden of proof has not prevailed before the Board, our scope of review is limited to a determination of whether the facts as found by the Board can be sustained without a capricious disregard of competent evidence. *Houff Transfer, Inc. v. Unemployment Compensation Board of Review,* 40 Pa. Commonwealth Ct. 238, 397 A.2d 42 (1979). Legal conclusions drawn from findings of fact are, of course, fully reviewable by our Court. *Eckenrode v. Unemployment Compensation Board of Review,* 37 Pa. Commonwealth Ct. 458, 390 A.2d 886 (1978).

Two provisions of the Law which are of significance to the instant case are Sections 4(u) and 404(d)(ii), 43 P.S. §§753(u) and 804(d)(ii). Section 4(u) provides in pertinent part:

> an employe who is unemployed during a plant shutdown *for vacation purposes* shall not be deemed ineligible for compensation merely by reason of the fact that he or his collective bargaining agents agreed to the vacation.

> No employe shall be deemed eligible for compensation during a plant shutdown *for vacation* who receives directly or indirectly any funds from the employer as vacation allowance. (Emphasis added.)

Section 404(d)(ii) provides:

> (d) Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to the first day of July, one thousand nine hundred seventy-four, shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of ... (ii) vacation pay, if any, which is in excess of his partial benefit credit, except when paid to

an employe who is permanently or indefinitely separated from his employment. . . .[5]

Cases interpreting Sections 4(u) and 404(d)(ii) of the Law have concluded that a basic prerequisite for the allocation of vacation pay to a particular period of time is that the time period be one *properly designated* as vacation time. *Eckenrode, supra; Ungarean Unemployment Compensation Case,* 207 Pa. Superior Ct. 506, 218 A.2d 847 (1966); *Piestrak Unemployment Compensation Case,* 404 Pa. 527, 172 A.2d 807 (1961). Only when the allocation of vacation pay is to a period properly labelled as vacation time is the deduction provision of Section 404(d)(ii) of the Law triggered. This interpretation was succinctly stated in *Eckenrode, supra* at 464, 390 A.2d at 889:

> If the employer has allocated vacation pay to a period which may not properly be considered vacation time, that vacation pay may not be relied upon *at all* to disqualify employees from receipt of unemployment compensation benefits for that period, and, absent any other reason for disqualification, the claimant would be entitled to full benefits. In that situation, the deductions under Sections 4(u) and 404(d) cannot be applied. (Emphasis in original.)

The term "vacation period" has been defined as "that period of time when an employe who otherwise would have been required to work was excused from

---

[5] The referee found as fact that each claimant "was aware, or should have been aware, on his last day of work that the plant closing was temporary and that he had a definite date of return, July 51, 1978." This finding has not been challenged, thus the exceptions clause of Section 404(d)(ii) is inapplicable to the instant case.

Section 404(d) of the Law has recently been amended by Section 16 of the Act of July 10, 1980, P.L.      , No. 108. The amendment, however, applies only to claim weeks beginning on or after March 31, 1980 and is, therefore, inapplicable to the instant case.

working. Consequently, a vacation period could not have occurred while an employe was laid off for lack of work.'' *United States Steel Corp. v. Unemployment Compensation Board of Review,* 37 Pa. Commonwealth Ct. 53, 58, 389 A.2d 249, 252 (1978) (citation omitted). Office of Employment Security regulations define a "vacation period" as:

    (1)  A period *designated* or approved by the claimant's employer as his vacation.

    (2)  The period of any plant-wide or departmental closing for vacation except to the extent that the employer of the claimant has granted him a separate vacation period in substitution, in whole or in part, for the general shutdown.

    (Emphasis added.)

34 Pa. Code §65.94. This definition is not dispositive of the instant case, as is argued by the Board. With respect to subsection (1) of the regulation, while the Employer in the instant case did "designate" the shutdown period as vacation for the claimants we believe that the regulations must be read so as not to conflict with case law which clearly prohibits the allocation of vacation pay to what is otherwise a non-vacation period. *See, e.g., Eckenrode, supra* and *Thomas v. Unemployment Compensation Board of Review,* 11 Pa. Commonwealth Ct. 431, 314 A.2d 594 (1974). Thus, a non-vacation period cannot be transformed into a vacation period by the simple action of an employer's unilateral designation. With respect to subsection (2) we note that the definition tracks the Law in requiring that the shutdown be for vacation purposes, and thus does not add to our tools of analysis. We, therefore, reject the Board's argument that the regulations are dispositive and proceed to a determination of whether the shutdown period was *properly* designated as vacation time.

Collective bargaining agreements are often consulted in determining whether a period of time may be

considered vacation time. *Eckenrode, supra.* Turning to the facts of the instant case we note several pertinent provisions of the collective bargaining agreement.

## VACATIONS WITH PAY

. . .

VI. *Vacation Season*

Vacations will be scheduled at such time during the year as the Plant Management finds most suitable, considering both the wishes of the employee and the efficient operation of the Plant. Vacation periods may be changed by the Plant Management in cases where it may be found necessary.

VII. *General Regulations*

. . .

(c)  Vacations will be arranged in advance, consequently, absences, unless previously arranged, will not be considered as a part of the vacation period.

. . .

(e)  By mutual agreement between an employee and the Plant Management, such employee may continue to work and receive vacation pay otherwise due for his scheduled vacation period.

For purposes of the instant case, we interpret these provisions to require, at a minimum, communication between the employee and his Employer concerning vacation arrangements made in advance of the scheduled vacation period.[6] The record demonstrates that no such advance communication occurred in the instant

---

[6] Our interpretation here is solely for purposes of determining eligibility for unemployment compensation and does not control in any way grievance procedures which might be initiated relative to the collective bargaining provisions here discussed.

case. The posted shutdown notice contained no reference relative to use of the time for vacation.[7] We also note that the collective bargaining agreement in the instant case does not refer to shutdown periods for vacation purposes. *Cf. Eckenrode, supra* (collective bargaining agreement required that certain employees take vacation during any inventory shutdown) and *Piestrak, supra* (collective bargaining agreement provided for a two week shutdown for vacation). Furthermore, an Employer notice dated March 1, 1978 stated that the summer shutdown "weeks *are not available for vacation scheduling* unless special permission is granted. . . ." (Emphasis added.) Finally, we note that uncontradicted testimony in the record establishes that claimants were not notified until the Friday before the shutdown commenced that their services were not required during the shutdown.

Applying the definition of "vacation period" previously noted to these facts it is clear that claimants were not *excused* from working, but rather were not *scheduled* to work. There is no evidence that any of the claimants requested that the shutdown period be used for their vacation time. The testimony indicates that claimants, in fact, wanted to work during the shutdown period. We find, therefore, that the July shutdown was not for vacation purposes as it applied to these claimants. Thus, the Employer's apparently unilateral allocation of vacation pay to the shutdown period was improper. The referee's conclusions of law

---

[7] The notice reads as follows:

At this time it is anticipated that the Plant wide summer shutdown will be July 17 through July 30, 1978.

The Christmas shutdown is scheduled for December 25 through December 31, 1978.

All employees needed during these periods for plant protection, maintenance or other work that cannot be deferred will be scheduled by their respective general foreman.

on these points, as affirmed by the Board, were in error and are reversed.

There remains for our consideration the question of whether or not claimants were, in fact, individually "available for suitable work" during their period of unemployment as required by Section 401(d) of the Law, 43 P.S. §801(d). Although we have concluded that Employer's treatment of the shutdown period as vacation time was improper in the instant case, our opinion certainly does not dispense with the fundamental requirement .that unemployed claimants be available for work. While there is testimony in the record indicating that certain claimants were actually available for work, the question of availability is one of fact for the Board. *Fitterling v. Unemployment Compensation Board of Review,* 41 Pa. Commonwealth Ct. 113, 398 A.2d 744 (1979). Neither the referee nor the Board made findings of fact relative to this issue. We must, therefore, remand to the Board for a determination of each claimant's availability for work during the applicable period of unemployment. We caution that unemployment compensation may not be used to finance what is in actuality treated by a claimant as a vacation.[8]

For the reasons stated in the foregoing opinion, we reverse the decision of the referee, as affirmed by the Board, and remand to the Board for a factual determination as to claimants' availability for work and a computation of benefits in each case where a claimant is found to have been available for work during his period of unemployment.

ORDER

AND Now, this 10th day of December, 1980, the orders of the Unemployment Compensation Board of

---

[8] *See* 34 Pa. Code §65.91..

Review, dated July 26, 1979, are hereby reversed and remanded to the Unemployment Compensation Board of Review for further proceedings consistent with the foregoing opinion.