John J. Wallace et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Wilkes-Barre Publishing Company, Intervenor.

644

Argued September 14, 1981, before President Judge Crumlish, Jr. and Judges Blatt and MacPhail, sitting as a panel of three.

*Warren J. Borish, Meranze, Katz, Spear & Wilderman*, for petitioners.

*Robert N. Opel, II, Hourigan, Kluger & Spohrer Associates*, with him *R. Eddie Wayland, King & Ballow*, for intervenor.

No appearance for respondent.

Opinion by President Judge Crumlish, Jr., April 7, 1982:

John Wallace, Jerry Mills, Robert Booth and Albert Bartoletti appeal an Unemployment Compensation Board of Review order which found them[1] to be

---

[1] These claimants are, by agreement of the parties, token claimants. Wallace represents the members of the Newspaper Guild, Local 120; Mills represents the Typographical Union, Local 187; Booth represents the members of International Printing and Graphic Communications Union, Local 139; and Bartoletti represents the members of the International Printing Pressmen and Assistants Union, Local 137.

ineligible for benefits under Section 402(d) of the Unemployment Compensation Law.[2] We affirm.

Claimants worked for the Wilkes-Barre (Newspaper) Publishing Company. They were members of four unions representing the employees of the newspaper. In May of 1978, Capital Cities Communications, Inc., purchased the newspaper. When two collective bargaining agreements expired on October 2, 1976, members continued to work under the old agreement; the two other agreements expired on September 30, 1978. All four unions continued to work under these expired agreements until October 6, 1978 when a work stoppage occurred.

The issue before us is whether the work stoppage was a strike or a lockout. Section 402 of the law provides:

> An employe shall be ineligible for compensation for any week—
>
> . . . .
>
> (d)   In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before commencement of the stoppage,

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. 802(d).

there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.

"The issue of whether a work stoppage results from a strike or from a lockout is a mixed question of law and fact, and the Board's conclusion is, therefore, subject to review by this Court." *Unemployment Compensation Board of Review v. Borger Steel Co.*, 30 Pa. Commonwealth Ct. 75, 78, 372 A.2d 969, 971 (1977). Additionally, the claimants bear the burden of proving that they are eligible to receive benefits.

Our scope of review where the party with the burden of proof has not prevailed before the Board is limited to a determination of whether the facts as found by the Board can be sustained without a capricious disregard of competent evidence. *Dennis v. Unemployment Compensation Board of Review*, 55 Pa. Commonwealth Ct. 215, 423 A.2d 458 (1980).

The employees have alleged that changes in the plant's structure, *i.e.*, the addition of various security measures, including the placing of guards within the plant, the building of a fence around the facility and issuing of I.D. cards to all employees, indicated the employer's intent to coerce the union into agreeing with the terms of the new agreement as proposed by the employer.

The referee in Finding of Fact No. 21 found:

21. The employer's actions in making structural changes and implementing security and other measures were not prohibited by any of the labor-management agreements and management, at all times, took the position that it had the unilateral right to implement same, and this right was not questioned by any of the unions; although the unions did object to some changes being made.

The employees further contend that the employer attempted to force some members to abandon the union either to retain their positions or to qualify for promotions.

In Finding of Fact No. 7 the referee found:

7. The employer did not force or pressure any of the employees to retire or leave their bargaining units and those employees who retired or withdrew from their unions did so voluntarily.

When the expiration of the remaining two collective bargaining agreements drew near, the four unions and the newspaper began negotiations. The referee found that the employer had offered to continue negotiating and to continue the employment conditions under the current agreements.

33. The employer's position was, and it so informed Local 120 on September 28, 1978, that the labor-management agreement required by its terms that both sides allow work to continue while negotiations continued and that the terms and conditions of the labor-management agreement would continue to be in full force and effect . . . , but this contention was rejected by Local 120.

34. The three other unions, Local 137, Local 139 and Local 187, were also aware of the employer's willingness to continue negotiating until the new labor-management agreements were reached, and they were also aware of the employer's offer to allow work to continue under the terms and provisions of their respective labor-management agreements; and each of these unions were also made aware of the employer's position by letters dated September 28, 1978. . . .

The test to be applied when a labor contract has expired and a work stoppage has taken the form of a strike is "to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing." *Philco Corp. v. Unemployment Compensation Board of Review,* 430 Pa. 101, 103, 242 A.2d 454, 455 (1968).

The referee found:

38. All four unions were aware that the employer was still willing to allow work to continue under the terms and provisions of the expired labor-management agreements while negotiations continued.

39. On October 6, 1978 at 5:45 P.M. officials of all four unions went together to the office of the publisher of the Times Leader and gave said employer representative a written letter dated October 6, 1978, signed by union officials representing all four unions, and said epistle read as follows:

'Please be advised that as of this date at 5:45 P.M., the Newspaper Guild of Wilkes-Barre, Local 120; Wilkes-Barre Printing Pressmen, Local 137; Wilkes-Barre Stereotypers and Electrotypers, Local 139, and Wilkes-Barre Typographical Union, Local 187, are on strike against the Wilkes-Barre Publishing Co., Wilkes-Barre, Pa.'

From these findings the referee determined that the final cause of the work stoppage was attributable solely to the unions,[3] hence it was a strike not a lockout

---

[3] Claimants would have us apply the "futility" doctrine, asserting that all of the employer's actions combined to make it futile to attempt to retain the status quo. *See Unemployment Compensation Board of Review v. Borger Steel Co.,* 30 Pa. Commonwealth Ct. 75,

and the claimants are ineligible for benefits under Section 402(d).

Additionally, claimants assert that they are entitled to benefits because they have been permanently deprived of employment. The referee found this not to be the case:

44. The employer began to advertise for employees to work in place of those who were not working, and advertised and continues to advertise for personnel to perform the work of the members bargaining units and non union personnel who have not worked after October 6, 1978.

45. The employer's advertisements list the various openings as being for permanent positions and states that strike conditions exist.

46. The employer has secured new employees in response to its efforts, but none have been guaranteed permanent employment, and no non working union member has been replaced by the employer on a permanent basis, and no non working union member has been discharged by the employer.

51. No employee, union or non union, who has advised the employer since October 6, 1978 that he or she desires to return to work has been refused, and all of such requests have been honored by the employer as of the date of the Referee's hearing.

Based on these findings the referee concluded that none of the union members had been replaced on a per-

---

372 A.2d 969 (1977), where this Court held that the union was not required to act where such act would "be in vain, or useless in light of an employer's ultimatimum." *Id.* at 80, 372 A.2d at 971. In light of the detailed findings of fact made by the referee, we find *Borger* to be distinguishable from the present case and thus find this assertion by claimants to be without merit.

manent basis and that they were thus still employees. The referee found the cause of their unemployment was their continued participation in the strike.

Here the Board's findings are supported by substantial evidence.

Affirmed.

### ORDER

The orders of the Unemployment Compensation Board of Review, Nos. B-177043, B-177050, B-177045 and B-177046, dated October 26, 1979 are affirmed.

Judge PALLADINO did not participate in the decision in this case.