504 A.2d 963

Arlene Hoffman, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Muriel Kinderman, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Evelyn Dice, et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 13, 1985, before Judges COLINS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Jerome H. Gerber,* with him, *Irwin W. Aronson, Handler, Gerber, Johnston, Strokoff & Cowden,* for petitioners.

*Charles D. Donahue,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE PALLADINO, February 7, 1986:

The above-named cases are consolidated because they involve a common issue. In cases No. 1144 C.D. 1984 and No. 1145 C.D. 1984, the Claimants are Arlene Hoffman and Muriel Kinderman, respectively, who are employed by Deborah Dress, Inc.[1] In case No. 49 C.D. 1985, the Claimants are Evelyn L. Dice, Phyllis F. Snyder, Alice J. Fritz, Myrna B. Shatzer, Mabel R. Peiffer, Larue A. Sheaffer, and Naomi T. Baker, who are employed by Nicky Lee Sportswear. Claimants Hoffman and Kinderman are seeking unemployment compensation benefits for a one-week period ending July 10, 1982, during which time their employer's plant was shut down. Claimant Dice and the other Claimants named in 49 C.D. 1985 are seeking benefits for a similar shutdown of their employer's plant, which occurred during the first week of July, 1984. The Unemployment Compensation Board of Review (Board) determined that the Claimants are ineligible for benefits pursuant to Section 404(d)(ii) of the Unemployment Compensation Law[2] (Law), because vaca-

---

[1] These two cases are representative appeals and thus our decision herein is determinative of the claims of all employees similarly situated to these claimants.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §804(d)(ii). This section provides, in pertinent part, that:

   (d) Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to July 1, 1980 shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of . . . (iii) vacation pay, if any, which is in excess of his partial benefit

tion pay received by them exceeded their weekly bene-
fit rate. We affirm the decisions and orders of the
Board.

The Claimants are members of the International
Ladies Garment Workers Union (Union) and their
employers belong to the Northeast Apparel Associa-
tion, Inc. (Association). The terms and conditions of
the Claimants' employment are governed by a collec-
tive bargaining agreement between the Union and the
Association. One term of the agreement specifies that
employer members of the Association may not desig-
nate a vacation period, or shut down their factories
for vacation purposes, without having obtained the
prior written consent of the Union.[3]

credit, except when paid to any employe who is permanently
or indefinitely separated from his employment. . . .

Vacation pay, or other remuneration deductible under the
provisions of this subsection shall be pro-rated on the basis
of the employee's normal full-time weekly wage and as so
pro-rated shall be allocated to such period or periods of
unemployment as shall be determined by rules and regu-
lations of the department.

[3] In regard to cases No. 1144 C.D. 1984 and No. 1145 C.D. 1984,
there is some question as to which, if any, agreement between the
Union and the Association was applicable to the shutdown period
in July of 1982. A prior collective bargaining agreement expired
on May 31, 1982, after which, in August of 1982, a "memorandum
of agreement" was entered into by the Union and the Association,
which agreement was retroactive to June 14, 1982. The memorandum
contained no terms concerning designated vacation periods. On
April 8, 1983, the parties executed a new collective bargaining
agreement which was retroactive to June 1, 1982, and which con-
tained a provision that prohibited employer members of the Asso-
ciation from unilaterally designating a vacation period.

Although the Board notes that neither the memorandum nor
the collective bargaining agreement were in existence at the time
Deborah Dress designated a vacation period, the Board's decision
in no way rests upon the applicability of a labor/management agree-
ment to the shutdown at issue, or upon the question of whether
Deborah Dress violated a collective bargaining agreement by des-

On June 16, 1982, the Association informed its employer members that their plants would close for one week in July of 1982, for vacation purposes. In accordance with that directive, Deborah Dress scheduled the claim week at issue as a vacation period and posted notices informing its employees of the plant shut down. The designation of the claim week at issue as a vacation period was accomplished without the consent of the Union. In June of 1982, Claimants Hoffman and Kinderman each received $258.38 from the Union's Health and Welfare Fund, which was applied by Deborah Dress to the shutdown period designated for the claim week ending July 10, 1982. The amount received by the Claimants was greater than the total weekly unemployment compensation benefit rate to which they would have been entitled. Claimants Hoffman and Kinderman also received holiday pay for the Fourth of July in the amount of $38.95 for each Claimant. In the case of Deborah Dress, its manufacturer, also known as a "jobber", contributes an agreed upon, fixed percentage to the Health and Welfare Fund, a portion of which fund is used to pay employees during vacation periods.

On June 14, 1984, Nicky Lee Sportswear scheduled the claim week ending July 7, 1984 as a vacation period, and posted notices informing its employees that the plant would be shut down for vacation purposes during the first week of July, 1984. The decision to shut down the plant for vacation was made without the consent of the Union. In June of 1984, Claimant Dice and the other Claimants named in 49 C.D. 1985 each received a payment from the Union's

ignating a vacation shutdown without the consent of the Union. Because our decision in this case does not require us to address these issues, we likewise make no determination regarding the construction and/or effect of the various agreements between the Union and the Association.

Health and Welfare Fund in an amount in excess of their total weekly benefit rate and partial benefit credit, which amount was applied by Nicky Lee Sportswear to the shutdown period designated for the claim week ending July 7, 1984. The Claimants also received holiday pay for the Fourth of July, 1984 holiday. Nicky Lee Sportswear contributes a fixed portion of its employee wages to the Health and Welfare Fund.

In cases No. 1144 C.D. 1984 and No. 1145 C.D. 1984, the Board applied the Office of Employment Security (OES) regulations, as set forth in 34 Pa. Code §§65.91-65.96, and determined that Deborah Dress had properly designated the shutdown in July of 1982 as a vacation period. Because vacation pay allocated to the vacation period exceeded the Claimant's weekly benefit rate, the Board found that the Claimants were thereby ineligible for unemployment compensation benefits. In so holding, the Board noted that it was not bound by the provisions of any agreements between the parties, and that an unemployment compensation proceeding is not the place to adjudicate alleged violations of a collective bargaining agreement.

In case No. 49 C.D. 1985, the referee determined that, on what were substantially the same facts, the Board's decision regarding the appeals of Claimants Hoffman and Kinderman was controlling. Accordingly, the referee held that Claimant Dice and the other Claimants were ineligible for benefits pursuant to Section 404(d)(ii) of the Law. The decision of the referee was thereafter affirmed by the Board.

On appeal to this Court, the Claimants contend that the Board erred in determining that payments from the Union's Health and Welfare Fund were properly allocated as vacation pay to the shutdown period. Specifically, the Claimants argue that the payments in question should not be considered as

vacation pay, because the employers' designation of the shutdown as a vacation was accomplished without the consent of the Union and was therefore violative of the applicable collective bargaining agreement.

Initially, we note that where, as here, the party with the burden of proof has not prevailed before the Board, our scope of review is limited to a determination of whether the facts as found by the Board can be sustained without a capricious disregard of competent evidence, and whether an error of law has been committed. *Dennis v. Unemployment Compensation Board of Review*, 55 Pa. Commonwealth Ct. 215, 423 A.2d 458 (1980).

Section 4(u) of the Law,[4] which defines the term "unemployed", states that "[n]o employee shall be deemed eligible for compensation during a plant shutdown for vacation who receives directly or indirectly any funds from the employer as vacation allowance." Our case law requires that this provision be given a reasonable interpretation. Receipt of some vacation pay by an employee does not automatically render him ineligible for unemployment compensation benefits; rather, vacation pay that has been properly allocated to an actual vacation period is deducted from the amount of benefits to which the employee is otherwise entitled, pursuant to Section 404(d)(ii) of the Law. *U.S. Steel Corp. v. Unemployment Compensation Board of Review*, 28 Pa. Commonwealth Ct. 445, 450, 368 A.2d 1319, 1322 (1977). As provided in Section 404(d)(ii), whether vacation pay is properly allocated to a period of unemployment shall be determined by the regulations of the OES.[5] *Susquehanna Collieries*

---

[4] 43 P.S. §753(u).

[5] The regulations applicable to vacation pay are found at 34 Pa. Code §§65.91-65.96. They provide as follows:

*v. Unemployment Compensation Board of Review*, 404
Pa. 527, 172 A.2d 807 (1961).

§65.91. Type of pay.

(a) Whether a payment constitutes "vacation pay" for
purposes of this Subchapter shall depend on the purpose
for which it is in fact paid or payable rather than the label
which may have been given. to the payment or to the fund
from which it is paid. Unemployment Compensation shall
not be used to finance vacations.

(b) When a plant or department-wide period is granted
for vacation and vacation pay is payable to an individual,
he shall not claim the period is a layoff for him due to
lack of work and that his vacation pay should be assign-
able to some other period, so as to obtain unemployment
compensation for one vacation with vacation pay from
the employer for another.

(c) The Superior Court has, in effect, held that where the
employer of the claimant has designated or approved a
vacation period for him, other than the general vacation
shutdown, any vacation pay he receives shall first be allo-
cated to the special vacation period the employer has
designated or approved for him.

(d) Apart from section 404 of the Law (43 P.S. §804),
claimant shall not meet the employment tests of eligi-
bility for unemployment compensation while he is actually
taking a vacation from work.

§65.92. Determination of eligibility.

In determining the eligibility of a claimant to whom vaca-
tion pay is paid or payable, it shall be considered immaterial
whether the vacation pay is paid directly by an employer
or through some other person or organization, so long as
it originates from employer payments. The principles
stated in this section shall also apply whether or not the
vacation pay is legally required to be paid. It shall be the
responsibility of any employer who provides for vacation
pay for his employees to notify the Department in writing
of this fact.

§65.93. Reductions in unemployment compensation.

Unemployment compensation otherwise payable to an indi-
vidual with respect to any week shall be reduced by the
amount of vacation pay which is in excess of the claimant's
partial benefit credit paid or payable to him with respect
to all or any part of a vacation period included within that

Our cases which have interpreted the statutes and regulations at issue here have consistently held that *only* the allocation of vacation pay to a period of time which is properly designated as vacation time will trigger the deduction provisions of Section 404(d)(ii). *Iceland Products v. Unemployment Compensation Board of Review*, 89 Pa. Commonwealth Ct. 251, 492 A.2d 457 (1985). By imposing this requirement we

week. Thus, an employee is not rendered totally ineligible by the receipt of vacation pay, but only to the extent of the amount of vacation pay, which is in excess of his partial benefit credit, that he receives with respect to that period. §65.94. Identification of vacation periods.

For the purposes of this Subchapter, the term "vacation period" shall mean the following:

(1) A period designated or approved by the claimants employer as his vacation.

(2) The period of any plant-wide or departmental closing for vacation except to the extent that the employer of the claimant has granted him a separate vacation period in substitution, in whole or in part, for the general shutdown. §65.95. Time of payment.

(a) Vacation pay shall be deemed to have been paid with respect to the vacation period irrespective of the time it is actually received by the claimant if it is for the calendar year in which the vacation period occurs.

(b) If, at the time of the vacation period, the claimant, due to insufficient service, has not yet established entitlement to vacation pay but will later accumulate the necessary amount of service, and if the claimant or his bargaining agent has not agreed to the particular time of the vacation period, the vacation pay shall not be allocated to the vacation period. §65.96. Calculation of vacation period.

The Department shall determine the number of days or weeks of the vacation period to which the vacation pay shall be applied by dividing the total amount of vacation pay by the regular full-time daily or weekly wage of the claimant. When the allocation of the payment is made on the basis of the number of days, the payment shall be apportioned to the customary working days in the calendar week.

recognize, as do the OES regulations, that there is necessarily a correlation between what periods of unemployment may properly be considered vacation time, what payments to employees may be considered vacation pay, and what constitutes proper allocation of vacation pay to a vacation period.

The guidelines for determining the relationship between these factors were first enunciated by the Supreme Court of Pennsylvania in *Susquehanna Collieries*. Therein, the Supreme Court emphasized that such a determination turns on adherence to the applicable regulations and the regulations' adherence to the legislative standards as set forth by statute. *Susquehanna Collieries*, 404 Pa. at 537, 172 A.2d at 812. Moreover, the Supreme Court held that reference by the Board to the collective bargaining agreement is perfectly proper in determining the relationship between vacation time and vacation pay, at least to the extent that such a reference is in accordance with the regulations. *Id.* at 536, 172 A.2d at 812.

In our cases that have applied these guidelines, no simple formula of easy application has emerged, because a fair and equitable determination requires that the guidelines be particularly sensitive to the specific facts present in each case. In *Thomas v. Unemployment Compensation Board of Review*, 11 Pa. Commonwealth Ct. 431, 314 A.2d 594 (1974), for example, a collective bargaining agreement in effect between the employer and its employees specified that the vacation period for all employees would be the first two weeks in July, 1971, and employee Thomas did in fact use the first two weeks of July as her vacation. The employer, however, informed its employees in early July that it would consider the vacation period as occurring during the last two weeks of July. This Court, in granting benefits to Thomas for the last two weeks of July, noted that the employer had agreed, by

way of the collective bargaining agreement, to designate the first two weeks of July as a vacation, and Thomas had treated this period as her vacation. Accordingly, the employer's attempt to designate another time period as a vacation and to allocate vacation pay to that period was ineffective.

In *Eckenrode v. Unemployment Compensation Board of Review,* 37 Pa. Commonwealth Ct. 458, 390 A.2d 886 (1978), the employer assigned to its employees a one-week vacation period, and vacation pay was received by the employees for that period. Thereafter, the employees sought unemployment compensation benefits for that week, on the grounds that the employer had improperly designated the week as a vacation period, in violation of the collective bargaining agreement, and therefore vacation pay could not be properly allocated to that period. This Court denied benefits, upon finding that the employer had properly designated the week as a vacation and had properly allocated vacation pay to that period. We noted further that the employer's designation of a vacation week was not inconsistent with the collective bargaining agreement. Importantly, we maintained that our references to the labor agreement were not intended to control in any way the outcome of a labor grievance procedure initiated by the employees over the same matter.

In *Dennis v. Unemployment Compensation Board of Review,* 55 Pa. Commonwealth Ct. 215, 423 A.2d 458 (1980), we were presented with a situation in which some employees had received vacation pay early in the year but had not intended to take any vacation time off, under an arrangement provided for in the collective bargaining agreement. In the middle of July, however, these employees were informed that they were not scheduled for work during the two weeks immediately following their notification. The em-

ployees received no extra remuneration for this period, but the employer attempted to allocate to this time the vacation pay which had earlier been received by the employees. This Court determined that the shutdown period was not properly designated by the employer as a vacation period, and that the vacation pay previously received by the employees could not therefore be properly allocated to that time. In reaching this conclusion, we noted that the collective bargaining agreement required communication between the employer and employees concerning vacation arrangements made in advance of the scheduled vacation period. Moreover, we found that the definition of the term "vacation period" had not been satisfied because, rather than having been excused from working, the employees simply were not scheduled for work.

Similarly, in *Iceland Products,* the employer attempted to allocate vacation pay to a shutdown period, even though it was paid for vacations expressly approved by the employer for after the shutdown. Therein, we again held that the definition of "vacation period" had not been met, and so the employer's allocation of vacation pay to that period was ineffective.

In the case at bar, the Claimants argue that the employers did not properly allocate vacation pay to an actual vacation period, because the employers' actions in designating the vacation contravened the provisions of the collective bargaining agreement. Our cases cited above, however, stand for the proposition that a collective bargaining agreement may properly be considered as evidence that is relevant to determining the relationship between vacation pay and vacation time. The probative value of this evidence is within the purview of the referee and the Board, as the finders of fact, to decide. These cases provide no authority to support the contention that the Board is

bound by the dictates of a collective bargaining agreement when making its determinations.

In deciding the instant case, the Board did not find the collective bargaining agreement to be of probative value in deciding the questions of whether the shutdown was an actual vacation period and whether the payments from the Health and Welfare Fund had been properly allocated to that time. Our review of the record proves to our satisfaction that the Board, in so doing, did not capriciously disregard competent evidence. While it is true that the employers may have violated the collective bargaining agreement by not obtaining the Union's advance consent to the vacation period, it was not for the Board to decide whether a violation had occurred. As this Court has held, " a compensation proceeding is not the place to adjudicate an alleged collective bargaining agreement violation." *Robert Bruce, Inc. v. Unemployment Compensation Board of Review,* 83 Pa. Commonwealth Ct. 398, 401, 477 A.2d 57, 59 (1984), *citing Carl Colteryahn Dairy, Inc. v. Unemployment Compensation Board of Review,* 46 Pa. Commonwealth Ct. 319, 326, 407 A.2d 71, 74 (1979). If the Claimants do in fact have a valid grievance against their employers, their remedy should not be sought from the unemployment compensation authorities, nor should it be paid out of funds earmarked for unemployment compensation.

The Board's decision in this case properly rests upon the application of the statutory provisions and regulations to the facts as they were determined by the Board. The payments from the Health and Welfare Fund were properly considered to be vacation pay, in accordance with Section 4(u) of the Law and 34 Pa. Code §65.92, because they originated from employer contributions to the Fund. Moreover, the requirements of 34 Pa. Code §65.91(a) are met, because the payments received by the Claimants were appar-

ently intended for vacation purposes, since the funds were distributed to the Claimants in June so as to be available during the shutdown period. Finally, the shutdown period was designated by the employers as a vacation period in accordance with provisions of 34 Pa. Code §65.95.[6]  Having found that the employers had properly allocated vacation pay to what was an actual vacation period, the Board thereupon determined that the deduction provisions of Section 404(d)(ii) were applicable and served to make the Claimants ineligible for benefits.

Our review of the record indicates that the Board did not capriciously disregard competent evidence in making its factual findings. Also, we have determined that the Board did not commit an error of law in its application of the statutory and regulatory provisions to the facts. Accordingly, we affirm the decisions and orders of the Board.

ORDER

AND Now, February 7, 1986, the orders of the Unemployment Compensation Board of Review at Nos.

---

[6] We note that this provision must be construed in accordance with the definition of the term "vacation" as set forth in *Dennis* and *Iceland Products,* to the effect that the term denotes a period of time when an employee who otherwise would have been required to work is *excused* from working. The distinction drawn in *Dennis,* in regard to being excused from working as opposed to not being scheduled to work, is closely related to the question of how and when vacation pay is allocated to vacation time. If vacation pay is distributed so as to be reasonably available during the time an employee is not in fact working, then he may properly be considered to have been excused from his employment. In situations such as the one presented in *Dennis,* however, where vacation pay is distributed to the employees without reasonable notice of a scheduled shutdown and, thereafter, the employer attempts to allocate the vacation payments to the shutdown period, then such an allocation is ineffective and improper, and the shutdown may not be considered as an actual vacation period.

B-228628 and B-228629, dated March 26, 1984, and Nos. B-236530, B-236531, B-236532, B-236533, B-236534, B-236535 and B-236536, dated December 6, 1984, are affirmed.

Judge COLINS concurs in the result only.

———

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I respectfully dissent. The Board found that because the employer designated the week at issue as a vacation week, *the compensation authorities are bound by law* to designate that week as the claimant's vacation period. This is clearly in error.

The Board based this conclusion on 34 Pa. Code 65.91(b), which provides that when a plant or department-wide period is granted for vacation and vacation pay is payable to an individual, she shall not claim the period as a lay-off for her due to lack of work and that her vacation pay shall be assignable to some other period so as to obtain unemployment compensation for one vacation with vacation pay from another period.

Section 4(u) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §753(u), provides that an employee is entitled to unemployment compensation for a vacation period even though he has agreed to the vacation period, unless the employer either directly or indirectly has paid for this vacation allowance.

In *Eckenrode v. Unemployment Compensation Board of Review,* 37 Pa. Commonwealth Ct. 458, 390 A.2d 886 (1978), these provisions have been interpreted to mean:

If the employer has allocated vacation pay to a period *which may not properly be considered vacation time, that vacation pay may not be re-*

*lied upon at all to disqualify employees from receipt of unemployment compensation benefits for that period,* and, absent any other reason for disqualification, that claimant would be entitled to full benefits.

*Id.* at 464, 390 A.2d at 889 (emphasis added). In such a situation, deductions under sections 4(u) and 404(d) cannot be applied.

Earlier, the court had said substantially the same thing in *Piestrak Unemployment Compensation Case, Susquehanna Collieries Division v. Unemployment Compensation Board of Review,* 404 Pa. 527, 172 A.2d 807 (1961), namely that section 4(u) must be interpreted as requiring an allocation of vacation pay to the actual vacation period. "[W]e find no justification in the statute or elsewhere nor is there for allocating vacation pay to a non-vacation period. . . ." *Id.* at 536, 172 A.2d at 812.

In *Dennis v. Unemployment Compensation Board of Review,* 55 Pa. Commonwealth Ct. 215, 423 A.2d 458 (1980), this court followed the *Eckenrode* and *Susquehanna* cases and reiterated that the period designated as vacation time must actually be a vacation period and just because the employer by unilateral action designates a shutdown period as vacation time does not make it so. The court said there must be a determination whether the shutdown period was properly designated as vacation time.

Thus, in light of these cases, the Board was clearly in error when it held that it was bound by law to designate the week as claimants' vacation period because the employer so designated the week. Such a designation should be supported by findings.

We do agree with the claimants' contention that the Board erred in ruling that it was improper to refer to the collective bargaining agreement to determine whether the week involved was a vacation week to which the payment can be allocated.

In both the *Eckenrode* and *Dennis* cases, the court did indicate that the collective bargaining agreement is of probative and relevant value in determining vacation arrangement.

In *Dennis,* the court said, "We note several provisions of the collective bargaining agreement. . . . [W]e interpret these provisions to require, at a minimum, communication between the employee and his Employer concerning vacation arrangements. . . ." *Id.* at 222, 423 A.2d at 461, 462.

The record indicates no such advance communication, but rather unilateral action. Referring to the collective bargaining agreement is not a determination of a grievance, as the court in *Dennis,* in a footnote indicated. "Our interpretation here is solely for the purposes of determining eligibility for unemployment compensation and does not control in any way grievance procedures which might be initiated relative to the collective bargaining provisions here discussed. *Id.* at 222, 423 A.2d at 462.

I would reverse and remand the matter to the Board for specific findings so that this court can properly make a determination on review.