561 A.2d 1286

**Ronald GRIMM, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 6, 1989.

Decided July 7, 1989.

Quintes D. Taglioli, Markowitz & Richman, Allentown, for petitioner.

John Herzog, Asst. Counsel, with him, James K. Bradley, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Scott F. Zimmerman, John B. Bechtol, Reed Smith Shaw & McClay, Pittsburgh, for Intern. Paper Co.

Before COLINS and SMITH, JJ., and BARBIERI, Senior Judge.

COLINS, Judge.

Ronald Grimm (petitioner) is an unemployment compensation claimant who is representative of the United Paper Workers International Union, Local 1787 (Union). The Unemployment Compensation Board of Review (Board) issued a decision on January 15, 1988 which reversed the referee and denied benefits under Section 402(d) of the Unemployment Compensation Law (Law)[1] concluding that claimant's unemployment resulted from a strike rather than a lockout by International Paper Company, Inc. (employer).

The relevant facts, as found by the Board, are summarized as follows. The Union and employer were parties to a collective bargaining agreement (agreement) which expired at 3:00 p.m. on June 20, 1987. The parties met at a series of negotiating sessions in May and June of 1987, with the last session prior to the expiration of the contract being held on June 18, 1987, during which no agreement could be reached. Employer submitted its best offer to the Union on the afternoon of June 18, 1987, which offer was rejected by the Union members on the same date.[2] On June 19, 1987, the

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(d).

2. The Union sought substantial improvements in wages and benefits and employer countered with proposals which included wage and

parties met with members of the Police Departments.[3] At the conclusion of the meeting, employer inquired as to whether the Union intended to call a strike and the Union inquired as to whether employer intended to make work available. The Union refused to tell employer whether it intended to call a strike in support of its bargaining demands. Employer also refused to respond to the Union's query and indicated to the Union that the ball was in its court to decide whether to offer to continue to work or engage in a strike. After failing to induce employer to commit to a course of action, the Union announced that there would be a strike. The Union never made an offer to continue to work under the terms and conditions of the expiring agreement.

On June 20, 1987, at 3:00 p.m., the existing agreement expired and a work stoppage began. Work remained available for the striking union under the terms of the expired agreement. Employer continued to operate during the work stoppage and shortly after it began, notified all employees that work was available.[4] Approximately three to four weeks after the work stoppage began, employer began hiring replacements who, along with approximately 22 employees who crossed the picket lines returning to work, were employed under the terms of the expired agreement.

Claimant applied for unemployment compensation benefits and was declared ineligible by the Office of Employment Security (OES) on July 13, 1987, pursuant to Section

benefit improvements as well as changes in the contract language which the Union considered to be disadvantageous to its members. (Board's Finding of Fact No. 5.)

3. According to testimony, the police departments called the meeting to advise the parties of their procedures and policies in the event of a strike situation.

4. Petitioner testified that subsequent to the work stoppage he received a letter from employer. When asked of its contents, he responded, "I think [it] said our jobs were available if we wanted to come back." (Notes of Testimony (N.T.) p. 19.) John White, Manager of Human Resources for employer, testified that a letter was sent to bargaining unit employees stating that work was available but to his knowledge, did not specify the terms and conditions. (N.T. p. 22.)

402(d) of the Law.[5] Claimant appealed on July 15, 1987 and the referee issued a decision August 18, 1987, reversing the decision of the OES and granting benefits. The referee concluded that the work stoppage was a lockout within the purview of Section 402(d) of the Law, since "any further offer to continue the status quo by the union would have been futile."

Employer timely appealed the referee's decision on August 24, 1987 to the Board asserting that the referee's findings of fact were not supported by the evidence and that the referee erred as a matter of law when he concluded that the labor dispute was a lockout. The Board issued a decision on January 15, 1988 reversing the referee and denying benefits, concluding that the Union did not make the required offer to continue working under the old agreement and that it would not have been futile for the Union to do so. Claimant petitions this Court for review of the Board's decision.

Claimant presents two arguments: first, whether the Board erred in concluding that it would not have been futile for the Union to offer to continue working under the pre-existing terms and conditions of employment; and second, whether the Board erred in allowing evidence concerning employer's post-work stoppage conduct presented by employer to buttress its position that work remained available under the terms and conditions of the expired agreement.

Claimant has the burden of proving that the work stoppage resulted from a lockout. *Crile Machine Co. v. Unemployment Compensation Board of Review*, 110 Pa.

---

5. Under Section 402(d) of the Law, 43 P.S. § 802(d), an employee is ineligible for unemployment compensation for any week

[i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed....

Commonwealth Ct. 150, 531 A.2d 1191 (1987).[6]

The test for determining whether a work stoppage is the result of a lockout or a strike was set forth by our Supreme Court in *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 163 A.2d 91 (1960).

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout'....

*Id.,* 400 Pa. at 444–45, 163 A.2d at 93–94. The Court further refined the test in *Philco Corporation v. Unemployment Compensation Board of Review,* 430 Pa. 101, 242 A.2d 454 (1968).

> [T]he test of whether a work stoppage resulted from a strike or a lockout requires us to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing.

*Id.,* 430 Pa. at 103, 242 A.2d at 455.

 Where, as here, the work stoppage takes the form of a strike, the Union has the burden of showing that it made the initial peace move by offering to continue to work under the terms and conditions of the old agreement and that the employer rejected that offer. *Philco.* It is undisputed in the instant matter that the Union made no such offer. Therefore, the Union must rely on the futility doctrine which provides that the Union need not offer to continue the status quo if it appears management definitely would not accept that offer. *Philco; Irvin Unemployment*

---

6. Our scope of review is limited to determining whether or not constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Crile Machine Co.*

*Compensation Case,* 198 Pa.Superior Ct. 308, 181 A.2d 854 (1962).

In *Irvin,* the union had suggested an extension of the status quo for two weeks while negotiations continued. At the end of the two week period, the union was again prepared to offer an extension but prior to the offer being made, the president of the company stated that anyone who reported for work the next day could do so only on his terms. The court held that any offer to continue the status quo would have been futile and that the employer's actions constituted a lockout. In *Unemployment Compensation Board of Review v. Borger Steel Co.,* 30 Pa.Commonwealth Ct. 75, 372 A.2d 969 (1977), this Court held the union need not make an offer to continue working under the status quo where such an action would be in vain or useless in light of an ultimatum issued by employer. Also, in *Effort Foundry, Inc. v. Unemployment Compensation Board of Review,* 125 Pa.Commonwealth Ct. 505, 558 A.2d 571 (1989), wherein the union representative testified that employer stated that its final offer would be unilaterally implemented at midnight on the expiration date of the present agreement, this Court held it would have been futile for the union to offer to continue the status quo.

Petitioner in the instant case advances the following reasons why it would have been futile for the union to offer to continue the status quo: first, the union asked employer several times at the final negotiating session whether work would be available and under what conditions at the expiration of the agreement and each time employer's response was "no comment;" second, employer established during negotiations that it had to have the concessions requested; and third, employer's own documents submitted to the OES were proof that work was only available under its final offer.

In *Philco,* our Supreme Court held that even though the company maintained a strong bargaining position and delivered a speech to the workers prior to the expiration of their agreement stating that Philco's business would be a waste

of time, money and effort without the new agreement and that ultimate survival of the plant was at stake, these actions alone were not sufficient to invoke the futility doctrine. This Court held that the futility doctrine did not apply in *Wallace v. Unemployment Compensation Board of Review,* 65 Pa.Commonwealth Ct. 643, 444 A.2d 186 (1982). Therein the employees alleged that changes instituted by employer including the addition of various security measures, placing guards within the plant, building a fence around the facility and issuing I.D. cards to all employees, indicated employer's attempt to force the union into agreeing with its proposed new terms.

■ A hard bargaining position, taken by either party, cannot by itself support an invocation of the futility doctrine. *Philco; Vrotney.* On the other hand, neither an adamant attitude on the part of the employees of "no agreement, no work," nor an employer's ultimatum that work will be available only on its terms are indications of a good faith desire to continue the operation of the enterprise. *Vrotney.* "[N]either side may issue an ultimatum without bearing the responsibility for the resulting work stoppage." *Borger,* 30 Pa.Commonwealth Ct. at 79, 372 A.2d at 971.

■ While there is no evidence in the instant matter that employer issued such an ultimatum, employer did complete an OES work stoppage questionnaire on June 26, 1987. In response to questions on that form as to whether work was available under the terms and conditions of employment that existed immediately prior to the stoppage, employer replied that work was available under *modified terms* under the company's best offer. However, four days later OES sent a letter to employer attempting to clarify its position on the matter and employer responded affirmatively in writing that employees would have been permitted to work after 3:00 p.m. on June 20, 1987 under the terms and conditions of the expired contract while negotiations continued.

■ The referee resolved this factual inconsistency in favor of the Union. Upon review, the Board conceded there was some confusion created due to employer's response on the OES work stoppage questionnaire. However, the Board resolved the inconsistency in favor of employer and chose to find credible the employer's clarifying information in response to the June 30, 1987 letter from OES. The Board may, when reviewing identical facts and taking no new evidence, reach opposite findings of fact from those found by the referee. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985). The Board is the ultimate finder of fact and determiner of credibility and its decision must be affirmed if supported by substantial evidence. *Heins v. Unemployment Compensation Board of Review,* 111 Pa.Commonwealth Ct. 604, 534 A.2d 592 (1987). Therefore, the Board committed no error in its conclusion that it would not have been futile for the union to have made an offer to continue the status quo.

As to the second issue, we see no error in the referee's and the Board's consideration of the fact that subsequent to the strike, employer allowed union members to return to their former positions under the same terms of the expired agreement. This testimony, determined to be credible by the Board, may be of limited probative value, however there is other direct evidence upon which the Board may have based its conclusions. We must remember that "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received." Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505.

Accordingly, the decision of the Board is affirmed.

ORDER

AND NOW, this 7th day of July, 1989, the decision of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.